[Civ. No. 18998. Second Dist., Div. Three. Jan. 28, 1953.]

ANTONINO RICCIARDI, Respondent, v. COUNTY OF
LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Appellants.

Holbrook, Tarr & O'Neill and Francis H. O'Neill for Respondent.

SHINN, P. J.—Plaintiff Ricciardi is and since 1922 has been the owner of property at the northeast corner of Rosemead and Ramona Boulevards in the county of Los Angeles. In 1924 he erected at a cost of about $80,000 buildings and structures especially designed and equipped as a slaughterhouse and meat processing, packing and refrigeration plant. In conformity with county ordinances he used the plant as originally constructed until 1945 when the State Department of Agriculture ordered him to make certain alterations in it. For the reason that his property had in the meantime been zoned for agricultural and residential purposes only, he made application to the Los Angeles County Regional Planning Commission for a permit to make the alterations. On November 1, 1945, the commission, after a hearing, approved the application and issued a permit for the alterations, but, without the consent of Ricciardi, incorporated therein a provision that his right to use and operate the premises as a slaughterhouse and packing plant should cease November 1, 1950. Ricciardi made the alterations at a cost of $30,000. On October 1, 1950, the county ordered him to cease doing business at the location on November 1st. He made an application for extension of his 1945 permit, which application was denied by the commission, and upon appeal was denied by the board of supervisors. He complied by closing his plant as ordered and brought this proceeding against the county and certain officers thereof in which he obtained an injunction restraining them from interfering with his operation of the plant. The defendants have appealed.

Our discussion of the case of Ricciardi is predicated upon a unique state of facts and is limited to a consideration of the operation of the ordinance upon the following principal facts: Ricciardi was engaged in a permitted business; he did not wish to enlarge it; he desired to make alterations in his building solely for the purpose of complying with an order of the State Department of Agriculture; denial by the county of a right to make the alterations would have deprived him of his right to continue in business.

At the time plaintiff constructed his plant and entered business there was no county ordinance forbidding the operation of a slaughterhouse at said location. It was altogether a legal operation.

Section 15 of Ordinance 1494, which was the original county zoning ordinance, adopted in 1927, did not disturb existing uses.[1] Neither did the 1933 amendment which placed plaintiff's property in zone A-1 (agricultural and residential). They could be continued indefinitely. There have been many amendments of the zoning ordinance but none of them has departed in principle from the protection of existing uses recognized in the 1927 ordinance. They have granted automatic exceptions generally in the language of the latest enactment, section 531.[2]

While it is material only as an aid to a better understanding of the general zoning scheme it may be mentioned that by amendments culminating in present section 531 the life of automatic exceptions has been specified for different types of buildings, and for industrial buildings (including slaughterhouses) has been fixed at 40 years, subject to revocation under the general procedure provided by the ordinance and also subject to extension.

---

[1] "Section 15. EXISTING USES. Nothing contained in this ordinance shall be deemed or construed to prohibit a continuation of the particular existing use or uses of any building, structure, improvement or premises existing in the respective zones at the time this ordinance becomes effective in the event that such existing use is not in violation of any other ordinance or law; provided, that if such use is changed to a different use such different use shall conform to the provisions of this ordinance regulating the particular zone in which the premises are located."

[2] "An exception is granted automatically, hereby, so as to permit the continuation of the particular existing uses of any building, structure, improvement or premises existing in the respective zones immediately prior to the time this ordinance or any amendment thereof becomes effective if such existing use was not in violation of this or any other ordinance or law."

In addition to automatic exceptions for existing uses there are other types of exceptions which may be granted upon application. The conditions upon which they will be granted are the same under present section 531 as they were under section 156 which was in force in 1945, namely, if: "(a) The exception is necessary for the preservation of a substantial property right of the owner; (b) Such exception will not be materially detrimental to the public welfare nor to the property of other persons located in the vicinity thereof."

In the original zoning ordinance there was no provision for revocation of exceptions. In 1943 the ordinance was amended by the addition of section 75, reading: "In addition to the other grounds set forth in this article a permit granted pursuant to this article, whether automatically or upon application, may be revoked and cancelled by the Board of Supervisors if it finds that the use is detrimental to the public health or safety or is a nuisance." No other provisions related to exceptions granted automatically. These grounds for revocation were retained in later amendments. Section 76 and 77 of the 1943 amendment provided that a permit (later referred to as an exception) could be revoked only after a public hearing before the commission.

In 1945 plaintiff held an automatic exception which would remain in effect unless and until it should be revoked by the board of supervisors. There was then in force section 123.[3] Plaintiff submitted with his application plans and specifications, which were approved by the commission and he was given a permit to make the alterations. However, without his consent the board incorporated the condition that he must discontinue his business by November 1, 1950.

The trial court found upon uncontroverted evidence that the alterations did not "increase, alter or change the extent, kind, type or amount of use of said property from the legally established and proper use therefor" etc. This finding was of a fact to be considered in determining the nature of the consent that was given in 1945. Defendants say that when permission is requested to make an alteration in a building which is under an automatic exception it is to be treated as

---

[3] "Buildings Converted or Altered. No building or structure existing at the time of the effective date of this ordinance which is designed, arranged, intended for or devoted to a use not permitted in the zone in which such building or structure is located, shall be enlarged, extended, reconstructed, built upon or structurally altered unless the use of such building or structure is changed to a use permitted in the zone in which such building or structure is located."

an application for an original exception and that it can be denied altogether or granted upon such terms as the board of supervisors see fit to impose. They cite section 155, which provides that *upon an application for an exception* ''the Board of Supervisors may except such property from any particular restriction or restrictions and permit the erection, alteration, reconstruction or enlargement of any building or structure thereon upon such terms and conditions as it deems proper under the particular circumstances shown to exist, if it finds that the facts are such as to entitle the petitioner to such an exception.'' They contend that under the authority thus granted, the board, in approving an application for an exception, may limit its life to such terms as it may deem reasonable. ▋ Granting, without deciding, that section 155 applies to automatic exceptions, the argument assumes that if approval is given for an alteration in a building that is under an automatic exception it amounts to the granting of a new exception. This may or may not be true. We shall see that it is not true in the present case.

The question as to the validity of the limitation of plaintiff's right to remain in business to five years involves nothing more than an interpretation of the various provisions of the ordinance and their application to the established facts. The county ordinance does not in terms make an exception of alterations which may become necessary in order to conform to other laws or the lawful orders of county or state authority. ▋ However, in judging of the legality of the proceedings which purported to terminate plaintiff's right to continue in business, we must assume the framers of the zoning ordinance knew that every business is subject to control in the interest of health and safety and anticipated that when some alteration in a structure should be demanded the ordinance would be interpreted and administered in a fair and reasonable manner.

The point is not argued and we do not decide whether the alterations demanded by state authority, which would not enlarge plaintiff's rights under the original exception, were such that the building would be ''structurally altered,'' thereby within the literal meaning of section 123. If so, it does not follow that giving approval to the alterations amounted to the granting of a new exception. ▋ Although ''structurally altered'' is an exceedingly broad term, it must be given a meaning which is consistent with the context in which it is used and the particular facts of the case. It must be recognized that there is a vast difference between altera-

tions which would result in or facilitate enlargement of a use under an exception and those that would merely enable the owner to continue his business on the same scale but in a more efficient or more sanitary manner. ■ A request for permission to make an alteration which is necessary in order to preserve the owner's original right under an automatic exception cannot in reason be subject to the limitations under which the board of supervisors may grant an exception, allow a structure to be altered so as to enlarge it or expand the original use, or directly or indirectly extend the life of the structure. It must be kept in mind that there is a fundamental difference between an exception that is granted as of right and one which may be granted conditionally.

We have seen that the zoning ordinance recognizes that automatic exceptions of substantial structures shall enjoy long life and that even a recognized life of 40 or 50 years may be extended. ■ It is not the purpose of the law to disallow repairs or minor alterations in a building merely to hasten obsolescence or to render it impossible to continue a permitted use. Upon the other hand it is the general purpose to eventually end all nonconforming uses and to permit no improvements or rebuilding which would extend the normal life of nonconforming structures. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 689 [234 P.2d 972].) ■ Every application for permission to make an alteration is not an application for a new exception. Having in mind that existing uses are protected by the granting of automatic exceptions for the purpose of preserving to the owner what he had at the time his property was zoned, it is clear that he may not enlarge his right except in the manner prescribed by ordinance. It is equally clear from the care that has been taken to refrain from interference with constitutional rights that the zoning ordinances should not be so interpreted or applied as to deprive the owner of his original right. That right, however, has its limitations. It may be terminated if it is determined that its longer exercise would be detrimental to public health or safety or a nuisance.

■ Upon application for an exception the questions are whether there are substantial property rights of the owner to be protected, and whether the desired operation would be detrimental to public welfare or to the property of others in the vicinity. Where a change in an existing structure is sought the question is whether the *change* is reasonably required in order to preserve the *original right* or would create

*some new or additional right,* exercise of which would be detrimental to the public or other property owners. These are the matters to be determined. In a technical view they arise whenever it is desired to make alterations in a building. It is for the commission and the board to decide what effect the alterations would have upon the rights of the applicant and the public. If the alteration is a minor one and is necessary in order to preserve the owner's property right which existed at the time of the zoning, denial of the application would be contrary to fundamental principles of zoning law. Upon the other hand, if it should be determined that denial of the application would not impair the right to continue an existing use as it was preserved originally, the owner is not entitled to make the alterations as a matter of right.

Although permission to make alterations should be applied for in order that the commission and the board may determine whether and to what extent the changes would affect existing rights it is readily seen that every such request is not the surrender of an existing exception or a petition for a new one.

In the present case allowance of the alterations was not the granting of a new exception. It was merely a recognition and protection of plaintiff's original right. If an existing use "is not in violation of any other ordinance or law" an exception is granted by the ordinance free from conditions or limitations, and it can be terminated or interfered with only in the manner provided by ordinance. Even if the 1945 application be regarded as one for an exception, although it was not for the enlargement of an existing right, the granting of it was a determination by the commission that the alterations were necessary for the preservation of a substantial property right of the owner and would not be materially detrimental to the public welfare or the property of other persons in the vicinity.

The condition inserted in the 1945 order was a conditional revocation of the automatic exception. The only explanation of it is that the commission was of the opinion that by November 1, 1950, conditions in the vicinity of plaintiff's property would have changed in such manner and to such extent as to furnish grounds for revocation of the original exception. It was an attempt to do indirectly what could not be done directly, namely, to conditionally revoke an

existing valid exception without a hearing upon notice in which the board of supervisors would be required to determine whether there existed one or more of the conditions specified in the ordinance as grounds for revocation.

There has been no proceeding for revocation of plaintiff's original exception, nor any proceeding which brought in question the existence of grounds for revocation. ▮ The existing exception, which represented a valuable property right, could not be revoked except upon grounds and by means of procedure prescribed by the zoning ordinance. (*Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [187 P.2d 686]; *Simpson* v. *Hite,* 36 Cal.2d 125, 135 [222 P.2d 225]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara,* 85 Cal. App.2d 776, 795 [194 P.2d 148].)

▮ Since plaintiff was required by the state to improve his plant in order to remain in business, and sought only preservation of an existing right, the attempted limitation of his exception was unauthorized and of no effect. We conclude, therefore, that when plaintiff's application was approved he obtained the right to make the changes free from the condition that the use of the property as a slaughterhouse must cease November 1, 1950.

We attach no importance to the 1950 proceeding in which plaintiff applied for and the board of supervisors refused an extension of the limitation sought to be imposed by the 1945 permit. To sustain the 1950 order would amount to a final determination by this court that plaintiff's right to do business expired November 1, 1950, without any proceeding having been had to terminate the right.

▮ Appellants contend that inasmuch as plaintiff continued to make use of the property from 1945 to 1950 he is estopped from questioning the validity of the conditions upon which approval of the alterations was granted. We find no merit in this contention. Plaintiff did not agree to the condition. He was between two fires. If he refused to obey the order of the State Department of Agriculture he would have to quit business. If he made the alterations and continued in business without having obtained approval of the alterations he would subject himself to punitive action by the county. ▮ Estoppel is an equitable doctrine. It will not be applied against one who is blameless. (*Williams* v. *Williams,* 170 Cal. 625, 629 [151 P. 10].) ▮ It should not be applied as a result of conditions which were forced upon plaintiff by state action and in favor of the county which

had granted him nothing to which he was not entitled and had suffered no detriment. There would be no equity in giving effect, indirectly, to the invalid curtailment of plaintiff's property rights.

 There was some testimony that six or seven residences had been erected in the vicinity of plaintiff's premises by persons who had read in a newspaper that the slaughterhouse would be closed down November 1, 1950. Defendants contend that plaintiff should be held estopped to continue his business. Plaintiff made no such representation, directly or indirectly. If houses were built in reliance upon an invalid order of the planning commission it was not through any fault of plaintiff. He had no knowledge of facts which would have called for public repudiation of the commission's action. Moreover, anyone who relied upon the order of the commission as effective to close up plaintiff's business would be chargeable with knowledge of its invalidity. The finding was against the claimed estoppel. The testimony introduced and that mentioned in an offer of proof was extremely vague and would not have furnished a basis for an estoppel.

 Defendants urge the point that plaintiff could have appealed to the board of supervisors questioning the five-year limitation imposed by the commission and that having failed to do so he has no standing in court. We do not believe the facts bring the case within the rule of exhaustion of administrative remedies. Plaintiff did go to the board of supervisors when the conditional provision of the commission's order came into actual operation. One reason for the rule is that resort should not be had to the courts for redress that might have been obtained through the administrative procedure. This would not be a sound reason, in view of the board's action in 1950. Since the ultimate action on the part of the board lay ahead of plaintiff, and was merely delayed, it would be a harsh and unwarranted application of the rule to hold that plaintiff should have appealed from a portion of the order in 1945.

 Defendants pleaded as a defense that plaintiff was operating a nuisance. Over plaintiff's objection certain witnesses testified that there were obnoxious odors and noises emanating from plaintiff's premises. This evidence was stricken on plaintiff's motion. The ruling was assigned as error. It would have been error if it had been the duty of the court, rather than the board of supervisors, to determine

whether conditions were created by plaintiff's operation which should be abated. But we agree that the present action was not one for the decision of that question. Findings and judgment one way or the other on that issue would have usurped the functions of the board of supervisors and would have deprived both plaintiff and defendants of the right to have the issue tried in the manner provided by law. However, it was error for the court to find that plaintiff's operation was not a nuisance for the reason already stated, and for the additional reason that all the evidence of the defendants on that subject had been stricken on plaintiff's motion.

 It was also error to find that the regional planning commission had found that plaintiff's operation was not a nuisance or detrimental to public health or safety. The finding erroneously implies that those matters had been in issue and had been legally determined in a hearing conducted for that purpose. This finding, and the finding that plaintiff's business did not constitute a nuisance should be stricken.

We construe the judgment as a restraint of defendants from enforcing the provision of the order of November 1, 1945, which purports to revoke and terminate plaintiff's right to operate a slaughterhouse upon the described premises. It does not purport to restrain them from any proceedings hereafter which may be instituted pursuant to applicable ordinances.

The judgment is affirmed, with directions to the court to strike the findings above mentioned and to make no findings to replace them.

Wood (Parker), J., and Vallée, J., concurred.