[Civ. No. 19998.   Second Dist., Div. Three.   Sept. 16, 1954.]

THE CITY OF LOS ANGELES, Appellant, v. A. I. GAGE et al., Respondents.

Roger Arnebergh, City Attorney, Bourke Jones and Alan G. Campbell, Assistant City Attorneys, and Alfred E. Rogers, Deputy City Attorney, for Appellant.

Clyde P. Harrell, Jr., for Respondents.

VALLÉE, J.—This appeal involves the constitutionality of the provisions of a zoning ordinance which require that certain nonconforming existing uses shall be discontinued within five years after its passage, as they apply to defendants' property.

Plaintiff brought this suit for an injunction to command defendants to discontinue their use of certain property for the conduct of a plumbing business and to remove various materials therefrom, and to restrain them from using the property for any purpose not permitted by the comprehensive zoning plan provisions of the Los Angeles Municipal Code. The cause was submitted to the trial court on admissions in the pleadings and a stipulation of facts. Defendants will be referred to as "Gage."

In 1930 Gage acquired adjoining Lots 220 and 221 located on Cochran Avenue in Los Angeles. He constructed a two-family residential building on Lot 221 and rented the upper half solely for residential purposes. He established a wholesale and retail plumbing supply business on the property. He used a room in the lower half of the residential building on Lot 221 as the office for the conduct of the business, and the rest of the lower half for residential purposes for himself and his family; he used a garage on Lot 221 for the storage of plumbing supplies and materials; and he constructed and used racks, bins, and stalls for the storage of such supplies and materials on Lot 220. Later Gage incorporated defendant company. The realty and the assets of the plumbing business were transferred to the company. The case is presented as though the property had been owned continuously from 1930 to date by the same defendant. The use of Lots 220 and 221, begun in 1930, has been substantially the same at all times since.

In 1930 the two lots and other property facing on Cochran Avenue in their vicinity were classified in "C" zone by the zoning ordinance then in effect. Under this classification the use to which Gage put the property was permitted. Shortly after Gage acquired Lots 220 and 221, they were classified in "C-3" zone and the use to which he put the property was expressly permitted. In 1936 the city council of the city passed Ordinance 77,000 which contained a comprehensive zoning plan for the city. Ordinance 77,000 reenacted the prior ordinances with respect to the use of Lots 220 and 221. In 1941 the city council passed Ordinance 85,015 by the terms

of which the use of a residential building for the conduct of an office in connection with the plumbing supply business was permitted. Ordinance 85,015 prohibited the open storage of materials in zone ''C-3'' but permitted such uses as had been established to continue as nonconforming uses. The use to which Lots 220 and 221 was put by defendants was a nonconforming use that might be continued. In 1946 the city council passed Ordinance 90,500. This ordinance reclassified Lots 220 and 221 and other property fronting on Cochran Avenue in their vicinity from zone ''C-3'' to zone ''R-4'' (Multiple dwelling zone). Use of Lots 220 and 221 for the conduct of a pumbing business was not permitted in zone ''R-4.'' At the time Ordinance 90,500 was passed, and at all times since, the Los Angeles Municipal Code (§ 12.23 B & C) provided: ''(a) The nonconforming use of a conforming building or structure may be continued, except that in the 'R' Zones any nonconforming commercial or industrial use of a residential building or residential accessory building shall be discontinued within five (5) years from June 1, 1946, or five (5) years from the date the use becomes nonconforming, whichever date is later. . . .

''(a) The nonconforming use of land shall be discontinued within five (5) years from June 1, 1946, or within five (5) years from the date the use became nonconforming, in each of the following cases: (1) where no buildings are employed in connection with such use; (2) where the only buildings employed are accessory or incidental to such use; (3) where such use is maintained in connection with a conforming building.''

Prior to the passage of Ordinance 90,500, about 50 per cent of the city had been zoned. It was the first ordinance which ''attempted to zone the entire corporate limits of the city.'' Prior to its passage, several thousand exceptions and variances were granted from restrictive provisions of prior ordinances, some of which permitted commercial use of property zoned for residential use, ''and in some cases permitted the use of land for particular purposes like or similar to use of subject property which otherwise would have been prohibited.'' Under Ordinance 90,500, the uses permitted by these exceptions and variances that did not carry a time limit may be continued indefinitely.

The business conducted by Gage on the property has produced a gross revenue varying between $125,000 and $350,000 a year. If he is required to abandon the use of the property for his business, he will be put to the following expenses:

"(1) The value of a suitable site for the conduct of its business would be about $10,000.00; which would be offset by the value of $7,500 of the lot now used. (2) The cost incident to removing of supplies to another location and construction of the necessary racks, sheds, bins and stalls which would be about $2,500.00. (3) The cost necessary to expend to advertise a new location. (4) The risk of a gain or a loss of business while moving, and the cost necessary to reestablish the business at a new location, the amount of which is uncertain."

The noise and disturbance caused by the loading and unloading of supplies, trucking, and the going and coming of workmen in connection with the operation of a plumbing business with an open storage yard is greater than the noise and disturbance that is normal in a district used solely for residential purposes.

The court found: the business conducted by Gage has a substantial value; he could not, either prior to June 1, 1951, or at any time thereafter or in the future, remove the business without substantial loss or expense; the value of Gage's property has not been increased or stabilized by the passage of Ordinance 90,500, nor will observance or enforcement of the ordinance increase the value of the property; the use of the property for the purpose that it has been used continuously since 1930 will not adversely and detrimentally affect the use or value of other property in the neighborhood thereof; the use to which the property has been put by Gage has not been unsanitary, unsightly, noisy, or otherwise incompatible with the legal uses of adjoining property; Gage has not, nor will he in the future, operate to disturb the peace and quiet of the residents of the neighborhood as long as the property is operated substantially as it was operated at the date of the filing of the complaint; the use to which the property has been put does not interfere with the lawful and reasonable use of the streets and alleys in the vicinity by the residents in the neighborhood or others entitled thereto.

The court concluded: Gage became vested with the right to use the property for the purpose that it was used; insofar as the Los Angeles Muncipal Code purports to require the abandonment of the use of the building on Lot 221 as an office for the plumbing and plumbing supply business or the use of Lot 220 for the open storage of plumbing supplies in the manner that it has been and is being used by Gage, it is void

and of no legal effect; Ordinance 90,500 is void insofar as it affects Gage's use of the property in that it deprives him of a vested right to use the property for the purpose it has been used continuously since 1930 and deprives him of property without due process of law. Judgment was that plaintiff take nothing. Plaintiff appeals.

Plaintiff contends that the mandatory discontinuance of a nonconforming use after a fixed period is a reasonable exercise of the police power, and that on the agreed facts the Los Angeles ordinance is a valid exercise of such power as applied to Gage's property. Gage does not question the validity of the ordinance as a whole, but he contends it may not be constitutionally applied to require the removal of his existing business. He asserts that under *Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14], the decision of the trial court was correct.

When a cause is submitted to a trial court on an agreed statement of facts without any other evidence, findings of fact are unnecessary; the only question before the trial court is the law applicable to the agreed facts; and on review any findings of fact may be disregarded. (*Crawford* v. *Imperial Irr. Dist.,* 200 Cal. 318, 335 [253 P. 726].) However, where the stipulation sets forth evidentiary material only, it is proper for the trial court to make findings of the ultimate facts. (*Taylor* v. *George,* 34 Cal.2d 552, 556 [212 P. 505].) In the present case the agreed facts consist of admissions in the answer and the stipulation of facts comprising evidentiary material only, including a number of exhibits which are photographs of defendants' property and property in its vicinity and a map showing the uses made of all of the property within 500 feet in all directions from Lots 220 and 221. If the findings are supported by any substantial evidence the judgment may not be disturbed. However, if only one conclusion can be reasonably drawn from the agreed facts and that conclusion is that Ordinance 90,500 is a valid exercise of the police power as applied to defendants' property—the findings must be disregarded and the judgment reversed.

Zoning laws are enacted in the exercise of the police power. (*Miller* v. *Board of Public Works,* 195 Cal. 477, 485-488 [234 P. 381, 38 A.L.R. 1479].) A zoning law is presumptively valid, and the burden is on the one assailing it to overcome the presumption. (*Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 348 [79 P.2d 1080]; *Sunny Slope Water Co.* v. *City of Pasadena,* 1 Cal.2d 87, 92 [33 P.2d 672];

*City of Yuba City* v. *Cherniavsky,* 117 Cal.App. 568, 572 [4 P.2d 299].) ■ The police power is not restricted to the suppression of nuisances. It includes the regulation of the use of property to the end that the public health, morals, safety, and general welfare may not be impaired or endangered. Zoning deals with many uses of property which are in no way harmful. (*Ex parte Hadacheck,* 165 Cal. 416, 419 [132 P. 584, L.R.A. 1916B 1248]; *Miller* v. *Board of Public Works,* 195 Cal. 477, 485 [234 P. 381, 38 A.L.R. 1479].)

■ A municipality has the power to establish and maintain residential and quasi-residential districts, and to exclude therefrom all nonconforming and conflicting uses. (12 Cal. Jur. 10-Yr.Supp, 147, § 8, and cases there cited.)

■ The power to declare a zoning ordinance unconstitutional should be exercised only where no reason exists to support the determination of the legislative body. [8] In passing upon the validity of legislation ''the rule is well settled that the legislative determination that the facts exist which make the law necessary, must not be set aside or disregarded by the courts, unless the legislative decision is clearly and palpably wrong and the error appears beyond reasonable doubt from facts or evidence which cannot be controverted, and of which the courts may properly take notice.'' (*In re Miller,* 162 Cal. 687, 696 [124 P. 427].)

■ ''In considering the scope or nature of appellate review in a case of this type we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government—the legislative—in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a fact-finding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. The duty to uphold the legislative power is as much the duty of appellate courts as it is of trial courts, and under the doctrine of separation of powers neither the trial nor appellate courts are authorized to 'review' legislative determinations. The only function of the courts is to determine whether the exercise of legislative power has exceeded constitutional limitations. As applied to the case at hand, the function of this court is to determine whether the record shows a reasonable basis for the action of the zoning authorities, and, if the reasonableness of the ordinance is fairly debatable, the

452

legislative determination will not be disturbed.'' (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990].)

The Fourteenth Amendment to the Constitution of the United States does not impair the police power of a municipality. (*Barbier* v. *Connolly,* 113 U.S. 27 [5 S.Ct. 357, 28 L.Ed. 923, 925].) Whether a zoning ordinance is unreasonable, arbitrary and discriminatory is related to its application to the particular property involved. (*Morris* v. *City of Los Angeles,* 116 Cal.App.2d 856, 861 [254 P.2d 935].) Each case must be determined on its own facts. (*Livingston Rock & Gravel Co.* v. *County of Los Angeles,* 43 Cal.2d 121, 126 [272 P.2d 4].)

The fact that various exceptions and variances were granted under zoning ordinances prior to Ordinance 90,500, and that some of them permitted the use of land for particular purposes like or similar to the use of defendants' property which otherwise would have been prohibited, presents a question for the zoning authorities of the city. They are the persons charged with the duty of deciding whether the conditions in other parts of the city require like prohibition. (*Ex parte Hadacheck,* 165 Cal. 416, 420 [132 P. 584, L.R.A. 1916B 1248] ; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 465 [202 P.2d 38, 7 A.L.R.2d 990] ; *County of San Diego* v. *McClurken,* 37 Cal.2d 683, 691 [234 P.2d 972] ; *Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552, 560 [254 P.2d 865].) The mere fact that a prior ordinance excepts a parcel of land in a residential district does not give the owner thereof a vested right to have the exception continued so as to entitle him, on that ground, to attack the validity of a later ordinance repealing the former. (*Marblehead Land Co.* v. *City of Los Angeles,* 9 Cir., 47 F.2d 528, cert. den. 284 U.S. 634 [52 S.Ct. 18, 76 L.Ed. 540].) A zoning ordinance may be amended from time to time as new and changing conditions warrant revision. (*Jardine* v. *City of Pasadena,* 199 Cal. 64, 76 [248 P. 225, 48 A.L.R. 509].) The fact that nearby business property has the same characteristics as the parcels involved in the proceeding does not justify the court in substituting its judgment for the judgment of the city council. (*Reynolds* v. *Barrett,* 12 Cal.2d 244, 249 [83 P.2d 29].)

Permitting some persons to violate a zoning regulation does not preclude its enforcement against others. (*Dono-*

*van* v. *City of Santa Monica,* 88 Cal.App.2d 386, 396 [199 P.2d 51] ; Anno. 119 A.L.R. 1509, 1517.)  The adaptability and suitability of defendants' property for business purposes is not controlling. The best interests of the entire district is the controlling factor. (*Reynolds* v. *Barrett,* 12 Cal.2d 244, 250 [83 P.2d 29].)

 The right of a city council, in the exercise of the police power, to regulate or, in proper cases, to prohibit the conduct of a given business, is not limited by the fact that the value of investments made in the business prior to any legislative action will be greatly diminished.  A business which, when established, was entirely unobjectionable, may, by the growth or change in the character of the neighborhood, become a source of danger to the public health, morals, safety, or general welfare of those who have come to be occupants of the surrounding territory. (*Ex parte Hadacheck,* 165 Cal. 416, 420, 421 [132 P. 584, L.R.A. 1916B 1248] ; *Curtis* v. *City of Los Angeles,* 172 Cal. 230, 234 [156 P. 462] ; *Brown* v. *City of Los Angeles,* 183 Cal. 783, 785-786 [192 P. 716] ; *Miller* v. *Board of Public Works,* 195 Cal. 477, 486-489 [234 P. 381, 38 A.L.R. 1479] ; *In re Ellis,* 11 Cal.2d 571, 574 [81 P.2d 911].)  The effect of zoning restrictions may be to depreciate sharply the value of a particular parcel.[1] The mere fact that some hardship is experienced is not material since "Every exercise of the police power is apt to affect adversely the property interest of somebody." (*Zahn* v. *Board of Public Works,* 195 Cal. 497, 512 [234 P. 388].)  An individual cannot complain of incidental injury if the police power is exercised for proper purposes of health, safety, morals, or general welfare, and if there is no arbitrary and unreasonable application in the particular case. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 338 [171 P.2d 542].)

 Damage caused by the proper exercise of the police power is merely one of the prices an individual must pay as a member of society.

 A nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance.  A

---

[1] In *Village of Euclid* v. *Ambler Realty Co.,* 272 U.S. 365 [47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016], the Supreme Court of the United States sustained zoning restrictions on vacant land with the effect that value was reduced from $10,000 to $2,500 an acre.

provision permitting the continuance of a nonconforming use is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 686 [234 P.2d 972]; *Wilkins* v. *City of San Bernardino,* 29 Cal. 2d 332 [171 P.2d 542]; *Rehfeld* v. *San Francisco,* 218 Cal. 83, 84 [21 P.2d 419].) ▮ It is generally held that a zoning ordinance may not operate to immediately suppress or remove from a particular district an otherwise lawful business or use already established therein. (58 Am.Jur. 1022, § 148.)

No case seems to have been decided in this state squarely involving the precise question presented in the case at bar. Until recently zoning ordinances have made no provision for any systematic and comprehensive elimination of the nonconforming use. The expectation seems to have been that existing nonconforming uses would be of little consequence and that they would eventually disappear. (See 9 Minn. L.Rev. 593, 598.) The contrary appears to be the case. (35 Va.L.Rev. 348, 352; Wis.L.Rev. (1951) 685; 99 Univ.Pa. L.Rev. 1019, 1021.) It is said that the fundamental problem facing zoning is the inability to eliminate the nonconforming use (17 Ill.Munic.Rev. 221, 232.)[2] ▮ The general purpose of present-day zoning ordinances is to eventually end all nonconforming uses. (*Ricciardi* v. *County of Los Angeles,* 115 Cal.App.2d 569, 576 [252 P.2d 773].) There is a growing tendency to guard against the indefinite continuance of nonconforming uses by providing for their liquidation within a prescribed period. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 686 [234 P.2d 972].) It is said, "The only positive method of getting rid of non-conforming uses yet devised is to amortize a nonconforming building. That is, to determine the normal useful remaining life of

---

[2] "It has always been assumed that non-conforming uses would gradually eliminate themselves from the district in which they exist if they were not permitted to expand. Such has not proven to be the case. They not merely continue to exist, but to send down deeper roots. They become clear monopolies and special privileges. Their existence is a continual threat to the conservation of property values in the districts where they exist. The time has come when cognizance should be taken of this situation and provision made, probably in the state law, whereby nonconforming uses may be gradually eliminated under some equitable method of procedure." Bartholomew, *The Zoning of Illinois Municipalities,* 17 Ill.Munic.Rev. 221, 232.

the building and prohibit the owner from maintaining it after the expiration of that time." (Crolly and Norton, *Termination of Nonconforming Uses*, 62 Zoning Bulletin 1, Regional Plan Assn., June 1952.)

Amortization of nonconforming uses has been expressly authorized by recent amendments to zoning enabling laws in a number of states. Ordinances providing for amortization of nonconforming uses have been passed in a number of large cities.[3] The length of time given the owner to eliminate his nonconforming use or building varies with the city and with the type of structure. In *Austin* v. *Older*, 283 Mich. 667 [278 N.W. 727], it is said (278 N.W. 730): "Certainly the maximum benefit of zoning ordinances cannot be obtained as long as nonconforming businesses remain within residential districts, and their gradual elimination is within the police power. *DeVito* v. *Pearsall*, 115 N.J.L. 323 [180 A. 202]; *Thayer* v. *Board of Appeals of City of Hartford*, 114 Conn. 15 [157 A. 273, 276]; *Rehfeld* v. *City of San Francisco*, 218 Cal. 83 [21 P.2d 419, 420]."

In *State ex rel. Dema Realty Co.* v. *McDonald*, 168 La. 172 [121 So. 613], the defendants had used their property as a retail grocery store for a great many years prior to 1927. In 1927 the city passed a zoning ordinance which established the area in which the property was located as a residential district and provided that all businesses then in operation within that area should be liquidated within one year from the passage of the ordinance. It was contended that this provision was unconstitutional as being arbitrary and unreasonable, and that it amounted to a taking of the defendants' property without due process of law. After referring to, and quoting at some length from, *Village of Euclid* v. *Ambler Realty Co.*, 272 U.S. 365 [47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016], the first case in which the Supreme Court of the United States considered and upheld the validity of a zoning ordinance, the court stated (121 So. 617): "It is to be observed, too, that the ordinance there under consideration provided for the establishment and maintenance of residential districts from which every kind of business was excluded. The ordinance did not

---

[3]Chicago, Ill. Zoning Ord. § 20 (1944); Mass. Acts 1948, ch. 214, § 9; Cleveland, Ohio, Ord. § 1281-9(e) 1930; New Orleans, La., Zoning Ord.; Richmond, Va. Zoning Ord. art. XIII, § 1 (1948); Seattle, Wash. See *State ex rel. Miller* v. *Cain*, 40 Wn.2d 216 [242 P.2d 505, 507]; Tallahassee, Fla. See *Standard Oil Co.* v. *City of Tallahassee*, 5 Cir., 183 F.2d 410; Wichita, Kan. Zoning Ord. § 24 (1948).

deal specially with any already established business in the zoned district. But, if the village had the authority to create and to maintain a purely residential district, which the court held it did have, and if such an ordinance was not arbitrary and unreasonable, it follows necessarily that the village was vested with the authority to remove any business or trade from the district and to fix a limit of time in which the same shall be done." The Supreme Court of the United States denied certiorari. (280 U.S. 556 [50 S.Ct. 16, 74 L.Ed. 612].) In *State* v. *Jacoby*, 168 La. 752 [123 So. 314], the validity of a zoning ordinance of New Orleans was attacked. The ordinance prohibited any business establishment from operating within a prescribed area, and gave all businesses in operation at the time one year in which to liquidate. The defendant had operated a small retail drugstore on her property for some time prior to the passage of the ordinance. She disregarded the ordinance. The court said (123 So. 316) : "It is also suggested that the ordinance is unconstitutional, because it grants only one year to liquidate and close an established business in the district. Defendant's drug store is a small one, and it is obvious that one year affords ample time within which to liquidate the business and close it. The validity of that provision of the ordinance was decided unfavorably to defendant's contention in *State ex rel. Dema Realty Co.* v. *McDonald, supra.* [168 La. 172 (121 So. 613).]"

In *Standard Oil Co.* v. *City of Tallahassee,* 5 Cir., 183 F.2d. 410, the plaintiff was operating a motor vehicle service station at the time the area in which it was located was, by a zoning ordinance, made a residence district. The ordinance, adopted in April 1948, provided that all locations then used for motor vehicle service stations should be discontinued as such on and after January 1, 1949. In upholding the validity of the ordinance the court stated (p. 413) : "The power of a municipality to require by ordinance the discontinuance of an existing property use also appears to be well established law in Florida. [Citations.] Here, plaintiff's service station is near the State Capitol and the State Supreme Court Building, as well as several other state office buildings and a public school. It therefore becomes manifest that its discontinuance under the ordinance cannot be viewed as arbitrary and unreasonable, or as having no relation to the safety and general welfare of the community affected. [Citations.] We find no merit in appellant's contention that enforcement of this ordinance would entail any unjust discrimination, or would be tantamount

to depriving it of its property without due process merely because the site was acquired and improved at considerable expense before the zoning ordinance was enacted. The general rule here applicable is that considerations of financial loss or of so-called 'vested rights' in private property are insufficient to outweigh the necessity for legitimate exercise of the police power of a municipality.'' The Supreme Court of the United States denied certiorari. (340 U.S. 892 [71 S.Ct. 208, 95 L.Ed. 647].) (See also *People* v. *Miller,* 304 N.Y. 105 [106 N.E.2d 34] ; *Bazinsky* v. *Kesbec, Inc.,* 259 App.Div. 467 [19 N.Y.S.2d 716].) There is one case to the contrary. (*City of Akron* v. *Chapman,* 160 Ohio St. 382 [116 N.E.2d 697]. See comment on this case, 67 Harv.L.Rev. 1283.)

In *Livingston Rock & Gravel Co.* v. *County of Los Angeles,* 43 Cal.2d 121 [272 P.2d 4], the court stated (p. 127): ''However, zoning legislation looks to the future in regulating district development and the eventual liquidation of nonconforming uses within a prescribed period commensurate with the investment involved. . . . Here the rezoning permits plaintiffs to continue their nonconforming use of the property for 20 years as an 'automatic exception' to the rezoning restrictions (§ 531, *supra; Edmonds* v. *County of Los Angeles, supra,* 40 Cal.2d 642, 651) but authorizes revocation of such exception where it can be done without the impairment of 'constitutional rights' (§ 533, *supra*). Manifestly, care has been taken in such rezoning regulations to refrain from the interference with constitutional guarantees, and in the light of such express language it would be a contradiction in terms to hold that the regulations are nevertheless unconstitutional.''

*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14], relied on by Gage, held unconstitutional, as applied to existing establishments, an ordinance making it unlawful to erect, operate, or maintain, in certain residential areas, a sanitarium for the treatment of persons suffering from mental or nervous diseases. The Jones case was distinguished in the recent case of *Livingston Rock & Gravel Co.* v. *County of Los Angeles, supra,* 43 Cal.2d 121. In the Livingston case an ordinance of the county of Los Angeles allowed certain existing nonconforming uses to continue for 20 years unless such exception should be revoked as provided in the ordinance. One ground of revocation specified was if the use was so exercised ''as to be detrimental to the public health or safety, or so as to be a nuisance.'' Distinguishing the Jones case the court said (43 Cal.2d 121, 126): ''Moreover, the ordinance under

consideration in the Jones case differed materially from the one here involved. There the ordinance, cast in the form of a penal statute rather than in the form of a comprehensive zoning law, prohibited the maintenance of sanitariums of a certain type in designated districts. By its terms the ordinance, unlike the ordinary zoning laws, purported to have both a retroactive as well as a prospective effect, thereby automatically prohibiting the continued maintenance of several established sanitariums representing large investments. In other words, no provision was made for any automatic exception for existing nonconforming uses. In the present case, the zoning ordinance does provide for automatic exceptions of reasonable duration for existing nonconforming uses, subject, however, to earlier revocation of the automatic exception if the use for which approval was granted is so exercised 'as to be detrimental to the public health or safety, or so as to be a nuisance.' (§ 649, *supra*) ; and the power to determine, upon notice, the question of whether the property was being so used was vested in the Regional Planning Commission.'' Assuming, as suggested by Gage, that the foregoing was dictum, we think it a correct statement of the distinction between the Jones case and the case at bar. There are other differences between Jones and the present case. There the regulation was of one type of commercial use. Here the regulation is of all commercial uses. There the ordinance affected a substantial investment in land and special buildings designed and built for the use to which they were being put. Here the ordinance affects only the use of land and the nonconforming use of a conforming building. The building has been, and may continue to be, used for the purpose for which it was designed and built. There the property could not have been used immediately for other purposes. Here the property can be used immediately for the uses for which it is zoned. In the Jones case the court said (pp. 319, 321) : ''We do not mean to hold that those engaged in the zoning of cities must always be faced with the impossibility of eradicating the nonconforming uses. . . . Our conclusion is that where, as here, a retroactive ordinance causes *substantial* injury and the prohibited business is not a nuisance, the ordinance is to that extent an unreasonable and unjustifiable exercise of police power.'' (Italics added.)

The theory in zoning is that each district is an appropriate area for the location of the uses which the zone plan permits in that area, and that the existence or entrance

of other uses will tend to impair the development and stability of the area for the appropriate uses. ▉ The public welfare must be considered from the standpoint of the objective of zoning and of all the property within any particular use district. (*Rehfeld* v. *San Francisco,* 218 Cal. 83, 85 [21 P.2d 419].) · It was not and is not contemplated that pre-existing nonconforming uses are to be perpetual. (*State ex rel. Miller* v. *Cain,* 40 Wn.2d 216 [242 P.2d 505].) ▉ The presence of any nonconforming use endangers the benefits to be derived from a comprehensive zoning plan. ▉ Having the undoubted power to establish residential districts, the legislative body has the power to make such classification really effective by adopting such reasonable regulations as would be conducive to the welfare, health, and safety of those desiring to live in such district and enjoy the benefits thereof. There would be no object in creating a residential district unless there were to be secured to those dwelling therein the advantages which are ordinarily considered the benefits of such residence. It would seem to be the logical and reasonable method of approach to place a time limit upon the continuance of existing nonconforming uses, commensurate with the investment involved and based on the nature of the use; and in cases of nonconforming structures, on their character, age, and other relevant factors.

▉ Exercise of the police power frequently impairs rights in property because the exercise of those rights is detrimental to the public interest. ▉ Every zoning ordinance effects some impairment of vested rights either by restricting prospective uses or by prohibiting the continuation of existing uses, because it affects property already owned by individuals at the time of its enactment. (*People* v. *Miller,* 304 N.Y. 105 [106 N.E.2d 34, 35].) In essence there is no distinction between requiring the discontinuance of a nonconforming use within a reasonable period and provisions which deny the right to add to or extend buildings devoted to an existing nonconforming use, which deny the right to resume a nonconforming use after a period of nonuse, which deny the right to extend or enlarge an existing nonconforming use, which deny the right to substitute new buildings for those devoted to an existing nonconforming use—all of which have been held to be valid exercises of the police power. (See *County of Orange* v. *Goldring,* 121 Cal.App.2d 442 [263 P.2d 321]; 58 Am.Jur. 1026, 1029, §§ 156, 158, 162; anno. 147

A.L.R. 167; 1 Yokley, *Zoning Law and Practice*, 2d ed., §§ 151-157.)

█ The distinction between an ordinance restricting future uses and one requiring the termination of present uses within a reasonable period of time is merely one of degree, and constitutionality depends on the relative importance to be given to the public gain and to the private loss. █ Zoning as it affects every piece of property is to some extent retroactive in that it applies to property already owned at the time of the effective date of the ordinance. █ The elimination of existing uses within a reasonable time does not amount to a taking of property nor does it necessarily restrict the use of property so that it cannot be used for any reasonable purpose. Use of a reasonable amortization scheme provides an equitable means of reconciliation of the conflicting interests in satisfaction of due process requirements. As a method of eliminating existing nonconforming uses it allows the owner of the nonconforming use, by affording an opportunity to make new plans, at least partially to offset any loss he might suffer. The loss he suffers, if any, is spread out over a period of years, and he enjoys a monopolistic position by virtue of the zoning ordinance as long as he remains. If the amortization period is reasonable the loss to the owner may· be small when compared with the benefit to the public. Nonconforming uses will eventually be eliminated. A legislative body may well conclude that the beneficial effect on the community of the eventual elimination of all nonconforming uses by a reasonable amortization plan more than offsets individual losses.

The ordinance in question provides, according to a graduated periodic schedule, for the gradual and ultimate elimination of all commercial and industrial uses in residential zones. These provisions require the discontinuance of nonconforming uses· of land within a five-year period, and the discontinuance of nonconforming commercial and industrial uses of residential buildings in the "R" zones within the same five-year period. These provisions are the only ones pertinent to the decision in this case. However, it may be noted that other provisions of the ordinance require the discontinuance of nonconforming billboards and, in residential zones, the discontinuance of nonconforming buildings and of nonconforming uses of nonconforming buildings, within specified periods running from 20 to 40 years according to the type of building construction.

█ We have no doubt that Ordinance 90,500, in com-

pelling the discontinuance of the use of defendants' property for a wholesale and retail plumbing and plumbing supply business, and for the open storage of plumbing supplies within five years after its passage, is a valid exercise of the police power. Lots 220 and 221 are several blocks from a business center and it appears that they are not within any reasonable or logical extension of such a center. The ordinance does not prevent the operation of defendants' business; it merely restricts its location. Discontinuance of the nonconforming use requires only that Gage move his plumbing business to property that is zoned for it. Such property can be found within a half mile of Gage's property. The cost of moving is $5,000 or less than 1 per cent of Gage's minimum gross business for five years, or less than half of 1 per cent of the mean of his gross business for five years. He has had eight years within which to move. The property is useable for residential purpose. Since 1930 Lot 221 has been used for residential purposes. All of the land within 500 feet of Gage's property is now improved and used for such purposes. Lot 220, now unimproved, can be improved for the same purposes.

We think it apparent that none of the agreed facts and none of the ultimate facts found by the court justify the conclusion that Ordinance 90,500, as applied to Gage's property, is clearly arbitrary or unreasonable, or has no substantial relation to the public's health, safety, morals, or general welfare, or that it is an unconstitutional impairment of his property rights.

It is enough for us to determine and we determine only that Ordinance 90,500 of the city of Los Angeles, insofar as it required the discontinuance of Gage's wholesale and retail plumbing business on Lots 220 and 221 within five years from the date of its passage, is a constitutional exercise of the police power.

The judgment is reversed, and the superior court is directed to render judgment for plaintiff as prayed for in the complaint.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 10, 1954.