JUSTO REYES, Petitioner, *v.* PLANNING BOARD OF PUERTO RICO, Respondent.

No. 38. Argued April 9, 1956.—Decided September 5, 1956.

*Rodolfo F. Aponte* for petitioner. *Rafael R. Fuertes* and *José E. Nieves Trilla* for respondent.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On or about March 16, 1954, petitioner filed with the Bureau of Permits an application for authorization to enlarge a two-story residential building by erecting a mirador 17 ft. by 21 ft., and a concrete two-story accessory building 21 ft. 6 in. by 25 ft., with facilities for two garages on the lower floor, and a library, bedroom, and bathroom on the upper floor. On April 15 of that year the Permit Official denied his application on the ground—as recited in the notice of denial—(1) that the main story of the building sought to be enlarged is used as a warehouse, which is a nonconforming use under Art. 34 of the Zoning Regulations, which restricts the use of buildings in the district where the property is located to residential purposes only; (2) that the accessory building on the left (sic) side, rear corner, is separated from the main building by only three feet, in nonconformance to Art. 21 of the Zoning Regulations which requires that whenever accessory buildings are erected on the lot line they must be separated from the main building by a distance of not less than 1.5 meters, or 5 feet; and (3) that the left side yard is only 6 ft. 6 in. wide, which does not comply with Art. 36 (4) of the Zoning Regulations, which requires two side yards each having a width of not less than three meters.

Petitioners appealed from the denial to the Planning Board, which affirmed the decision of the Permit Official on the 16th day of the following June. The request for reconsideration was denied. The grounds for the orders of denial of the Board were (1) that although the property in question is located in an R–5 residential district, the main story of the building is used as a warehouse for a department store, a use which is not permitted in that class of districts by Art. 34 of the Zoning Regulations;[1] (2) that Art. 80 of the

---

[1] When the Zoning Regulations went into effect the main story of the building was used as a warehouse. Hence, that story continued to be used for the same purpose. In this connection, Art. 77 of the Regulations provides:

"Except as provided in Articles 81 and 82, any building or

Zoning Regulations does not permit the construction of additions to buildings or premises devoted to nonconforming uses, unless such use is changed to a conforming use; (3) that petitioner has not shown his willingness to eliminate the nonconforming use of the building; and (4) that there are no special circumstances warranting the granting of the permit applied for.

Petitioner appealed to this Court by a petition for review within the period prescribed by § 26 of the Planning Act— No. 213 of May 12, 1942 (Sess. Laws, pp. 1106, 1132), as amended by Act No. 434 of May 14, 1951 (Sess. Laws, pp. 1226, 1242). He maintains in his petition, after stating the pertinent facts, that the decisions of the respondent Board are erroneous and contrary to law:

"a. Because the building in question is devoted to a mixed use, i.e., the use of the main story is nonconforming, while that of the second floor is conforming.

"b. Because, on the basis of the foregoing, the erection of a mirador is permitted as an enlargement of the second story, the use of which is conforming, since the structural elements of the enlargement comply with all the legal requirements as to height, area, yards, etc., aside from the fact that it will be devoted also to a conforming use.

"c. Because the proposed accessory building also complies, as to the structural elements, with all legal requirements regarding height, area, size of lot, etc; and its use will be in conformance to zonification, being wholly separate, in its physical

premises which does not conform with this Regulation but which is legally existing at the effective date of a Zoning Map, and [sic] amendment to a Zoning Map or an Official Map for the area in which it is located, may be continued for the purpose and to the extent to which it was being used at such time."

It has been held that "Zoning ordinances do not contemplate that pre-existing nonconforming uses are to be perpetual," and that "a nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance." *City of Los Angeles* v. *Gage*, 274 P. 2d 34 (Cal., 1954). Also, that "the spirit underlying the Zoning Act is to restrict rather than to increase any non-conforming use." *State* v. *Casper*, 68 A. 2d 545 (N. J., 1949).

aspect and proposed use, from the first story of the main building, the use of which is nonconforming.

"d. Because the proposed constructions reduce or diminish the percentage of present nonconformance for the entire building, as it now exists, and that a greater percentage of the building will come within the norms of conformance.

"e. Because the two proposed constructions pose different problems which must be disposed of separately, since one involves the enlargement of the existing building while the other involves an accessory building separate and apart from the former.

"f. Because the denial of the building permit does not afford protection to the public health or security, denies to petitioner the most appropriate and convenient use of his property, thus depriving him of his property without due process of law, in violation of § 7 of Art. II of the Constitution of the Commonwealth of Puerto Rico."

The writ sought having been issued, the parties filed a stipulation admitting the following facts:

"(a) The lot and buildings involved in this action are situated at 619 Ernesto Cerra Street, Santurce, Puerto Rico, which is a residential apartment district classified as District R–5 according to the Zoning Map of San Juan.

"(b) The main story of this building is used as a warehouse so that its use is legally nonconforming, according to Art. 77 of the Zoning Regulations.

"The second story and the existing accessory buildings situated in the yard are devoted to conforming uses, pursuant to the Regulations.

"(c) The main story is constructed entirely of concrete, including the floors, walls, and ceiling; it is not connected inside with the second story, and is completely independent of the latter for all purposes.

"(d) The accessory buildings existing in the yard are also entirely independent and separate from the nonconforming main story and are used for conforming purposes, that is, in connection with the dwelling on the second story.

"(e) The constructions which petitioner proposes to erect and which are the object of this appeal include a mirador above the second story and an accessory building in the yard.

"(f) The proposed constructions are not part of the main story and will not be used in connection therewith, but rather for conforming purposes under the Regulations, i.e., for purposes of the dwelling on the second story wherein the owner, petitioner herein, resides.

"(g) The nonconformities to the Zoning Regulations pointed out by the Permit Official as respects the yards and distance between the main and the accessory buildings are not in issue here, since the petitioner agreed to alter his plans and to correct such deficiencies.

"(h) Respondent's only objection to the granting of the building permit in this case is that petitioner has not shown his willingness to eliminate the nonconforming use of the main story as a condition precedent to the granting of the permit."

We now turn to discuss the errors in the order assigned by petitioner as committed by respondent Board. The fact that the building is for a mixed use, that is, that the use of the main story is nonconforming, since it is devoted to a warehouse, and that the use of the second story is conforming, since it is devoted to a residence, in no way alters the conclusion which may be reached. Section 23 of Act No. 213 of 1942, as amended by Act No. 434 of 1951, p. 1234, provides clearly and conclusively that: ". . . From and after the effectiveness of the zoning regulations . . . no land or building nor any part thereof shall be used except in conformity with said regulations and pursuant to a permit granted by the Permit Official in accordance with the zoning regulations and with this Act, *or for the purpose for which, and to the extent which, it was being used at the time said regulations took effect.*[2] (Italics ours.) Under the authority conferred by the Legislature, the respondent Board adopted a Zoning Regulation which was promulgated on May 22, 1946. According to Art. 1, subd. 25 (Sp. 50), of that Regulation, *a nonconforming building is a building* "which does not conform with the provisions of this Regulation applicable to the district or zone in which it is located." There-

---

[2] See Art. 77 of the Zoning Regulations, cited in footnote 1.

fore, according to that provision of the Regulation, the use of the building herein involved should be considered as entirely nonconforming, despite the fact that as a question of fact only a part thereof (the main story) is devoted to a nonconforming use.

The structural elements of the enlargement which petitioner proposes to make may perhaps comply with all legal requirements as to height, area, yards, etc., but this is not conclusive nor does it by itself bind the Board to issue the desired permit. This is so because, according to Art. 80 of the Zoning Regulation *supra*, "No *additions or structural alterations* to said buildings or premises containing nonconforming uses shall be allowed, unless such use is changed to a conforming use."[3] (Italics ours.) The context of that article is crystal clear. Since petitioner's building is classified entirely as nonconforming, no additions or structural alterations may be legally made thereto, such as those sought by petitioner, unless the use of the entire building is changed to a conforming use. There is nothing in the record to show that petitioner has eliminated or proposes to eliminate at once the warehouse existing in the main story of the building in question, or that he has devoted or proposes to devote in the near future the premises occupied by the warehouse to residential use. Therefore, the decision of the Board in this respect conforms to law.

 The foregoing applies equally to the accessory building proposed to be erected. It has been seen that under Art. 80 of the Regulations, no additions or structural alterations to buildings or premises devoted to nonconforming uses, etc., shall be allowed, and that from the interpretation of that

---

[3] Article 6(1) of the Zoning Regulations provides further that:

"No building permit shall be issued for the erection, enlargement, alteration, arrangement for a specific use, or moving of any building unless the existing or proposed premises prepared or designed to be occupied or used, shall be in conformity with the provisions of this Regulation."

article we have concluded that the enlargement of the main building should not be authorized. The accessory building would be a unit independent of the former.[4] According to the definition of the term "premises" contained in subd. 36 (Sp. 42) of Art. 1 of the Zoning Regulation,[5] the lot on which the accessory building will be erected as well as such building would be "premises," and by express provision of Art. 80, *supra*, no additions or structural alterations to "premises" dedicated to nonconforming uses shall be allowed. The construction of the accessory building would be a structural alteration. See Art. 1, subd. 45 (Sp. 1), of the Regulations, *supra*, which provides that by "structural alterations" is meant ". . . any additions, extensions, increases or variations of size in the existing structural elements. . . ."

The case of *Bartkus* v. *Albers*, 208 N. W. 260 (Wisc., 1926),[6] cited by petitioner, does not, in our opinion, lend him any support, since although the problem there involved

[4] Article 1, subd. 1 (Sp. 15), of the Zoning Regulations defines "accessory building" as "a building separated from the main building and containing one or more accessory uses."

[5] Article 1, subd. 36 (Sp. 42), defines the term "premises" as follows: "A lot, structure or building, or a unit composed of a lot and buildings or structures located on it."

[6] The facts involved in *Bartkus* v. *Albers*, *supra*, were as follows: Petitioner was the owner of a two-story building in the city of Kenosha. In January 1924, he used the lower floor of the building as a store and lived on the second floor with his family. Under a zoning ordinance adopted by the city of Kenosha in the said month and year, appellant's property was placed in a residential district. Under that ordinance the use of a building in that residential district for the purposes of a store was a nonconforming use. The ordinance, however, gave appellant the right to continue this nonconforming use because the building was used for store purposes at the time the ordinance was adopted. In May 1925, applicant requested a permit to bulid a one-story frame addition at the rear of his store building, which application stated that the addition was to be used for residential purposes. The building inspector refused to issue a permit. The Supreme Court of Wisconsin, in deciding the appeal, stated in its opinion that:
". . . The only question presented is whether by the erection of the proposed building the appellant will violate any of the provisions of the zoning ordinance.
"The intent clearly expressed by the zoning ordinance is that no new structure shall be erected in this residential area which does

was similar to the problem here, as to the accessory building, the opinion rendered therein does not disclose the terms of the ordinance construed in that case. The provisions of our Zoning Regulations *supra* are altogether clear and they are adverse to petitioner's contentions, both in connection with the enlargement of the main building and as to the construction of the accessory building.

Petitioner's contention that the constructions reduce or diminish the percentage of present nonconformity for the whole building as it exists at present is without merit. It stands to reason that if he were permitted to erect the mirador in question, the percentage of the gross area of the building devoted to a nonconforming use would be lower. Yet, the area devoted to a nonconforming use would still be the same, and, as already stated, under Art. 1, subd. 25 (Sp. 50), of the Regulations, the fact that part of a building is nonconforming is sufficient to consider the entire building

not comply with the provisions of the ordinance or which is to be devoted to a nonconforming use. It is equally clear that there was no intent to compel the destruction of buildings in existence when the ordinance was passed, or to compel the owners or occupants of buildings to cease to use existing buildings for any lawful purpose to which they were devoted at the time of the enactment of this ordinance. Appellant, therefore, has the right to continue to conduct his store in the property here in question, so long as he confined his store business to the building in existence at the time that the ordinance was passed. But he has no right to extend it to any new structure erected on his property.

"The application states that the new structure is to be used for residential purposes. So long as this new structure is used for such purposes, there will be no violation of the ordinance. The proposed building has more than the required setback from the street. It does not require structural changes in an existing building for the purpose of extending a nonconforming use. The fact that the new structure is built at the rear of the store building, and that it is connected with the store by a doorway, may have led those who acted for the city to conclude that this new structure was to be used for store purposes. But the only proof contained in the record is the statement of the owner that he desires to use the structure for residential purposes. If, in the future, the new structure is used as a part of the existing store, or for any other nonconforming use, the courts possess ample power to prevent such a violation of the zoning ordinance."

as devoted to such use, and to disallow, under Art. 80 of those Regulations, any additions or structural alterations to the building.

■ We do not agree with petitioner that the two proposed constructions pose different problems. Article 80 of the Regulations *supra*, as has been noted, applies to the enlargement of the main building and to the construction of the accessory building as well.

■ Zoning regulations are generally adopted bearing ir mind, as the main objective, that the health, morals, security, and general welfare of the community may not be impaired or endangered. However, in cases such as this the basic question, if not the only one, to be decided is whether the Board has acted arbitrarily or illegally or so unreasonably as to have abused its discretion. 147 A.L.R. 167, and cases cited at p. 168. We believe there has been no such arbitrariness, illegality, or abuse of discretion. The Board's conclusion was a wise interpretation of the aforecited provisions of its Regulations.

■ In *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 71 L. Ed. 303, 54 A.L.R. 1016 (1926), the United States Supreme Court held that ordinances embodying provisions similar to those involved in this case and which are contained in the Zoning Regulations adopted by respondent Board, are wholly constitutional. We subscribe to this view. The same has continued to be upheld by the authorities. See Annotations in 54 A.L.R. 1030, and 64 A.L.R. 920.

The decisions of the Board will be affirmed.[7]

---

[7] Articles 1(45), (1), (36), 34 and 80 of the Zoning Regulations of 1946, to which reference is made in this opinion, are equivalent to Arts. 1.00(4), (21), (50), 40.00, and 115.00 of the new Zoning Regulations adopted by the Planning Board on June 22, 1955, and promulgated pursuant to law on the 13th day of the following July.