[S. F. No. 15881. In Bank.—May 2, 1938.]

NATIONAL ICE AND COLD STORAGE COMPANY OF CALIFORNIA (a Corporation), Appellant, v. PACIFIC FRUIT EXPRESS COMPANY, Respondent.

Gavin McNab, Schmulowitz, Wyman, Aikins & Brune, Nat Schmulowitz, H. M. Hammack, Schauer, Ryon & Mc-Mahon, Leo T. McMahon, Robert E. Paradise, Gibson, Dunn & Crutcher, H. F. Prince, Homer D. Crotty and David P. Evans for Appellant.

Henley C. Booth, H. H. McElroy, Hengstler, Dorr & Stevenson and Guy V. Shoup for Respondent.

HOUSER, J.—On July 31, 1933, a statute known as the "Retail Sales Tax Act of 1933" (Stats. 1933, p. 2599) became effective. As far as here is important, the title of that statute is "An Act imposing a tax for the privilege of selling tangible personal property and for the privilege of furnishing, preparing or serving tangible personal property, providing for permits to retailers, (and) providing for the levying, assessing, collecting, paying and disposing of such tax, . . . " In part, section 3 of the statute provides that, "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers. . . . " Various other excerpts from the statute which contain implications of the fact that the tax was intended to be levied upon retailers, are as follows: by section 9, it is provided that "The tax levied hereunder shall be a direct obligation of the retailer; . . . The retailer shall . . . make out a return . . . The retailer shall deliver the return together with a remittance of the amount of the tax due to the office of the board." By section 12, retailers are required to obtain permits to engage in the business of selling tangible personal property at retail. By section 13, a permit fee of $1 for each place of business of the retailer is required. By section 17, the board of equalization is authorized to make additional assessments of tax against a retailer. Section 18 authorizes the board of equali-

zation to make arbitrary assessments of tax against a retailer. By section 20, a retailer is authorized to obtain a hearing for reassessment of taxes assessed against him. By section 23, refunds to retailers are authorized. Section 24 has reference to fraud or evasion of the tax on the part of a retailer. Section 26 provides for the collection of the tax from retailers; and the tax is declared a lien against his property. Section 27 requires retailers to keep records. Section 31 allows a retailer who has paid a tax under protest to bring an action for the recovery of such tax, and by section 32, penalties are provided for against retailers who may violate an order of the board of equalization.

In opposition to that which may be termed the manifest intent of the foregoing provisions, the statute also contains certain other provisions, to wit: by section 4 thereof, it is provided that, "In any case where tangible personal property is sold at retail under a contract made prior to the effective date of this act, which specifies and fixes the sale price and such sale is taxable under this act, the seller may add the tax imposed by this act to the sale price and collect it from the buyer." Section 8½ of the statute contains the declaration that "The tax hereby imposed shall be collected by the retailer from the consumer in so far as the same can be done . . . " By section 8 of the statute, a retailer is inhibited from advertising in any manner that the tax will be assumed or absorbed by him, "or that it will not be added to the selling price of the property sold, or if added that it or any part thereof will be refunded . . . "

At a date approximately seven years preceding that upon which said act became effective, a written contract was entered into between the plaintiff and the defendant, which related to the furnishing and the sale of ice by the plaintiff to the defendant for the purpose of the refrigeration of railroad cars which purportedly were owned by the defendant. Subsequently, that agreement was extended in its operative effect until April 30, 1938. At no time did the agreement contain any provision relative to the payment by either party of any sales tax such as was contemplated by the provisions of the "Retail Sales Tax Act of 1933", or otherwise. Between the dates of August 1, 1933, and June 30, 1935, the plaintiff sold to the defendant many thousand tons of ice, which ice was used by the defendant both in interstate and

in intrastate business, and for which full payment was made in accordance with the price fixed therefor by the terms of the agreement between the parties thereto. Based upon language that is contained within section 4 of the said act, to the effect that in circumstances such as hereinbefore have been outlined, the "seller" was authorized "to add the tax imposed by this act to the sale price and collect it from the buyer", the plaintiff claimed that the defendant was liable for the payment of an additional sum of money, equal to the amount of the tax which had accrued on the gross amount of the purchase price of the said ice which theretofore had been delivered by the plaintiff to the defendant. In reliance upon other provisions of the act which hereinbefore have been set forth, the defendant refused to pay to the plaintiff the amount of its said demand with reference to said tax, or any part thereof. Acting within its assumed authority in the matter, the state board of equalization, having made its demand on the plaintiff that it pay to the said board the amount of the tax that thus had become due, the plaintiff filed an action for declaratory relief against the defendant and the said board, to the end that the rights and the duties of the respective parties in the premises might be judicially determined. A general demurrer that was filed by said board to the complaint in said proceeding was sustained "without leave to amend" said complaint. From a judgment that subsequently was rendered in favor of the defendant Pacific Fruit Express Company, the plaintiff has appealed to this court.

Appellant urges the point that the defendant was a wholesaler of the ice that the plaintiff had delivered to it,—consequently, that the statute, having no reference to merchants of that description, had no application to the situation here presented.

Although in the course of the execution of the contract that existed between the parties thereto, the gross tonnage of ice that was thus sold and delivered might seem to indicate the conclusion that in effect a wholesale, rather than a retail business was transacted, nevertheless, in view of the language that is contained in subdivision (c) of section 2 of the statute, wherein a "retail sale" or "sale at retail" is expressly declared to mean "a sale to a consumer or to any person for any purpose other than for resale", it becomes

apparent that the question of the character of the business that was conducted by the ice company became one of fact. The finding that was made by the trial court on that issue was as follows:

"The relationship between the plaintiff ice company and the defendant express company in the sales and furnishings of ice by the former to the latter out of which this controversy arose was that said ice company was the retailer of said ice within the meaning of the act referred to in Paragraph V of the complaint, and not a wholesaler of said ice; and said express company was, within the meaning of said act, the consumer of said ice, and not a retailer or wholesaler thereof."

■ The evidence with respect to that finding of fact is voluminous. However, including other evidence in support of the conclusion that was reached by the trial court in that connection, it may be noted that as a foundational fact, the express company was owned by the railroad companies to which ice was furnished; consequently that in the various transactions that occurred between either of the railroad companies and the express company, the latter was acting only as an agent for the former; also that in legal contemplation, as declared by numerous authorities, the ice was not purchased for the purpose of "resale", but to the contrary, was "consumed" by the railroad company in performing its service to shippers in furnishing and refrigerating cars. No useful purpose would be served by presenting herein even a summary of the pertinent evidence in that regard. Suffice it to say that it is amply sufficient to sustain the conclusion that was reached by the trial court with reference thereto. In such circumstances, the rule is well established that a supported finding of fact cannot be disturbed by an appellate tribunal.

■ It next is contended by the appellant that although by the terms of the statute the tax originally and primarily is imposed upon the retailer, the intention of the legislature in enacting the statute, as is manifested by its entire language, was and is that in reality the consumer should pay the tax. In support of such contention the appellant not only cites numerous authorities from each of several jurisdictions throughout the United States, wherein statutes of similar character have been in question, but also considers and to

some extent distinguishes the several precedents established by each of several of the appellate courts of this state which are at variance with its view of the issue thus presented. But however forceful may be the argument of counsel who represent the appellant, or however persuasive may be the several conclusions that heretofore have been reached by courts of other jurisdictions, the fact remains that in each of the criticized adjudications that have been made by the courts of this state with reference to the issue,—apparently following a full and fair presentation to such courts of the identical point here in question, in each instance it has been ruled contrarily to the conclusion to which counsel now would have this court arrive. Nor, aside from the impelling effect of such authorities of our own state, in substance, that the tax was intended to be imposed upon the retailer, is this court convinced that the fiction of "legislative intent" was that the consumer or purchaser of personal property, sold at retail, should directly pay a tax that, according to the title of the act, was imposed "for the privilege of selling tangible personal property", and which act, by its express language provides that "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers. . . ."

The several precedents that have been established by the courts of this state for the rule that the tax is imposed upon the retailer, and not upon the consumer, are as follows: *People* v. *Herbert's of Los Angeles, Inc.,* 3 Cal. App. (2d) 482 [39 Pac. (2d) 829]; *Rio Grande Oil Co.* v. *Los Angeles,* 6 Cal. App. (2d) 200 [44 Pac. (2d) 451]; *Graham Bros., Inc.,* v. *Los Angeles,* 6 Cal. App. (2d) 203 [44 Pac. (2d) 452]; *Roth Drug, Inc.,* v. *Johnson,* 13 Cal. App. (2d) 720 [57 Pac. (2d) 1022]. And to that number should be added that of *Meyer Construction Co.* v. *Corbett,* 7 Fed. Supp. 616, which was decided by the United States District Court. But even those cases do not constitute a complete list of the authorities in this state which deal directly and conclusively with the point at issue. The case of *Western Lithograph Co.* v. *State Board of Equalization, ante,* p. 156 [78 Pac. (2d) 731], reinforced by each of the companion cases of identical title, numbered respectively, S. F. 15915 and S. F. 15916, very recently decided by this court, is likewise clearly to the effect that the tax is a direct obligation upon the re-

tailer for his privilege to conduct a retail business. The point here at issue is so thoroughly considered in the first of those cases that it becomes unnecessary to now devote further attention to that question.

However, the question of the legal right of the retailer to ''pass on'' to the consumer a tax which by the terms of the statute has been imposed directly on the retailer remains for consideration. As hereinbefore has been set forth, section 4 of the statute contains the provision that, ''In any case where tangible personal property is sold at retail under a contract made prior to the effective date of this act, which specifies and fixes the sale price and such sale is taxable under this act, the seller may add the tax imposed by this act to the sale price and collect it from the buyer.'' Other language employed in the statute, although not containing direct authorization of the retailer to collect the tax from the purchaser, also impliedly gave him that right.

It is undisputed that each of the several sales of the commodity, which is the subject matter of the instant inquiry, was made pursuant to and ''under a contract made prior to the effective date of this act'' and that the ''sale price'' of such commodity was specified and fixed by the provisions thereof. It therefore is clear that as far as legislative enactment is concerned, the ice company was fully authorized to add to the sale price of the ice which it sold to the express company the tax which, by the terms of the same statute had been directly imposed on the ice company as the seller and retailer of such ice. But in that connection, although no ''actual controversy'' exists between the respective parties as to the existence of such statutory authorization of the ice company to ''pass on'' the tax to the express company or to collect it (''as far as the same can be done''), it is urged that such direction or mandate is violative of the ''due process'' clause of both the state and the federal Constitutions with reference to the fundamental right of ownership of property. At the outset, it is commonly conceded by the appellant and the respondent that, as affecting a transaction of the character of a sale of ''tangible personal property'' it would have been within the power of the legislature to have imposed a tax upon either the retailer or the purchaser of such property; but in that connection, even if any controversy may be said to exist as between the parties hereto, the

only possible difference of opinion between them relates to the constitutionality of the provisions of section 4 of the act, which, in effect, is that with reference to a contract "made prior to the effective date of this act" the purchaser of tangible personal property may be compelled to reimburse the retailer thereof for money paid or to be paid by him as a tax "for the privilege of selling" such property. No authorities are cited by either of the parties to this appeal pertinent to the point thus tentatively suggested for consideration by this court.. In effect, respondent confidently has asserted that as applying to such a situation no authority is required; and in the same connection, the appellant makes the statement that "We take it that there is a clear violation of due process to provide by statute that a tax originally and ultimately imposed on and payable by one person shall be paid by another. On the other hand, unless there is a legal right in the seller to collect and an ultimate legal liability on the purchaser to pay the sales tax or the amount thereof, the state may not provide that the seller '*shall collect*' the tax or the amount thereof from the purchaser and provide penalties for failure to secure such payment."

As a legal deduction, it has been judicially declared that a tax constitutes a debt owed by the person upon whom such tax has been legally imposed; and aside from equitable considerations (which here are not involved), to baldly legislate that without, and in the absence of either due or any process of law, a legal debt that is owed by one person must be paid by another, is quite at variance with ordinary notions of that which may be termed the administration of justice. It therefore may be deemed concluded, that as far as may concern the particular or any other provision of the statute to which attention hereinbefore has been directed, which purports either directly or indirectly to authorize the retailer of "tangible personal property" to collect from or to charge to the purchaser thereof the tax imposed upon its retailer "for the privilege of selling" such property, is unconstitutional and consequently invalid. But it should be noted that it is not because of any asserted or assumed lack of power in the state in the first instance to impose a tax on a purchaser of "tangible personal property" that the invalidity of the several provisions of the statute is adjudged, but rather for the reason that having first directed the imposi-

tion of a tax on the retailer of such property, by the terms of the statute he is authorized to compel the purchaser to assume the retailer's direct liability in that .regard, that the unconstitutionality of the several provisions of the statute is made to appear. However, such declaration of the law is not intended to indicate the illegality of authority which may be lodged in a retailer to "pass on" the tax to a purchaser with the latter's consent thereto, either expressly or impliedly given. That sort of arrangement between interested parties.in such a sale is not here involved.

It should be remembered that the record herein discloses the fact that although originally the state (acting through its board of equalization) was a party to the proceedings in the lower court, by reason of the additional fact that the state's demurrer to the complaint was sustained "without leave to amend", thereafter the state ceased to be a party to the proceeding. Nor is it represented in any way on the hearing of the instant appeal. For that reason, the propriety of the rendition of that which might be termed an "ex parte" decision by this court upon questions that are not properly before this court in this proceeding, and which may be of vital importance to the interest of the state in matters that may or do affect the collection of revenue for the benefit of the state, is more than doubtful. Strictly speaking, as between the parties to the contract, the only ultimate question properly at issue is whether the plaintiff has the legal right to collect from the defendant the tax that by the provisions of the statute is imposed on the plaintiff. However, since possibly to a limited extent, some of the less difficult of those questions may appear to relate to the main issue that constitutes "an actual controversy" (sec. 1060, Code Civ. Proc.) between the respective parties thereto, and the probability that none of the several rulings which will be made thereon should adversely affect the interest of the state, they will be accorded consideration, to wit:

In substance, it is contended by the appellant that should the decision by this court be to the effect that the retailer only is liable for the payment of the tax, and that in the absence of any agreement on the part of the consumer or purchaser that he will assume that burden, he is under no legal liability to do so,—with the result, as hereinbefore has been indicated, that as far as the statute in question may

purport to create in the retailer a legal right to reimburse himself from the ''consumer'' for the payment which the retailer has made of any tax, is unconstitutional,—the consequence is that the entire act may be invalid. The reason that is assigned by the appellant for such suggestion is that that portion of the act which this court here decides is unconstitutional is ''non-separable'' from the remainder of the act. Respecting that subject, the rule is well established that where it clearly appears that the rejected portion of a statute is so connected and intermingled with the remainder thereof that, in substance, when such objectionable part is excluded, it will be impossible to give effect to the manifest scope of the statute, the entire act must fall. But in itself, section 34 of the statute would seem a sufficient answer to appellant's contention, in that it provides that: ''If any section, subsection, clause, sentence or phrase of this act which is reasonably separable from the remaining portions of this act is for any reason held to be unconstitutional, such decision shall not affect the remaining portions of this act. The Legislature hereby declares that it would have passed the remaining portions of this act irrespective of the fact that any such section, subsection, clause, sentence or phrase of this act be declared unconstitutional.''

Furthermore, a comparison of the objectionable portion of the instant statute both with the title and the body thereof, impels the conclusion that the scope and the design of the statute will remain unharmed and unaffected by reason of the elimination therefrom of the unconstitutional provision here under consideration. As indicated by its title, the general purpose of the act is to impose a tax ''for the privilege of selling tangible personal property . . . ''; and by section 3 of the act it is expressly provided that such tax ''is hereby imposed upon retailers . . . '';—and of which, together with its various incidents remains intact and unimpaired. It follows that appellant's contention in that regard cannot be sustained.

Notwithstanding the several conclusions that the tax is a liability imposed on the retailer of ''tangible personal property'', which without and in the absence of either the express or the implied consent of the purchaser, may not be ''passed on'' to the latter, the appellant urges the point that for the reason that the sale which was made by it to the re-

spondent was pursuant to and in accordance with the terms of a contract which was entered into between the respective parties at a date which preceded that upon which the statute became operative—the effect of the statute, if the appellant be obliged to pay the tax, may be that it is discriminatory as to it, and that the statute may impair the obligation of the contract which was entered into by the appellant with the respondent in that it has the effect of decreasing the sale price of the ice which the appellant has contracted to deliver to the respondent at a specified and fixed compensation therefor. With reference to the asserted discrimination against the appellant, it is suggested that if under the general provisions of the act other retailers be permitted to ''pass on'' the tax to their respective purchasers, and the appellant be not so privileged, the former will be granted an advantage which is withheld from the appellant. But as far as may be ascertained, no such variance in treatment of different respective retailers will ensue. Had the provisions of section 4 of the act been upheld as valid, it is not impossible that other retailers might feel themselves aggrieved by reason of a preference which might be asserted by them to exist in favor of the appellant; but with the elimination from the statute of the provisions of section 4 thereof, the result is that the appellant is placed at least on an equality with all other retailers. Regarding the point that as to sales of ice made by the appellant ''under a contract made prior to the effective date of this act'', the imposition of a tax on the retailer will have the effect of lessening the sale price of such ice, and consequently will impair the obligation of such contract, it need only be said that the principle of law is well established that the existence of an executory contract between or among two or more individuals presents no obstacle to the right or power of the state to levy or to impose a tax which may adversely affect the financial interests of either or any of the parties which may have been acquired under or by reason of the mutual covenants of such parties to the contract. An excerpt from one eminent authority will suffice to illustrate the rule. In the dissenting opinion in the case of *Coolidge* v. *Long*, 282 U. S. 582, at page 638 [51 Sup. Ct. 306, 75 L. Ed. 562], the following pertinent language occurs: ''In short, it is evident from the authorities cited, and many more which might be quoted, that the power to tax property, or

a right, or a status, or a privilege, acquired or enjoyed by virtue of a contract, is in nowise hindered or impeded by the fact of the existence of the contract whether it antedates or follows the effective date of the taxing act. No exercise of a governmental power, whether it be that of taxation, police, or eminent domain, though it make less valuable the fruits of a private contract, can be said to impair the obligation thereof.''

With reference particularly to its own situation as the imposition of the tax may affect it, the appellant presents several other objections to either the validity or the enforcement of the statute; none of which in any degree may be said to be strictly germane to a determination of the rights of either of the respective parties to this proceeding, with relation one to the other; and since a decision as to any or either of such objections might greatly affect not only the interest of the state, but as well that of many others who may occupy a position with reference to the imposition of the tax similar to that either of the appellant or the respondent, none of whom is represented in this proceeding, it is deemed inadvisable that consideration be given by this court to any or either of such objections.

The judgment is affirmed.

Shenk, J., Curtis, J., Seawell, J., Langdon, J., and Edmonds, J., concurred.