[Civ. No. 5426.   Fourth Dist.   Dec. 13, 1956.]

THE CITY OF LA MESA, Appellant, v. TWEED AND GAMBRELL PLANING MILL (a Corporation) et al., Respondents.

Gilbert Harelson, City Attorney, and Jennings, Engstrand & Henrikson for Appellant.

Hillyer & Crake and Oscar F. Irwin for Respondents.

COUGHLIN, J. pro tem.*—This is an appeal from a judgment in an eminent domain proceeding involving the taking of a 40-foot strip of land, which was part of a larger parcel belonging to the defendants. By its verdict, the jury found that the market value of the whole parcel was $70,000; the market value of the part proposed to be taken was $10,500; and the severance damage to the remaining property was $47,500. The plaintiff seeks a reversal because of error in instructing the jury; in the admission of testimony; and in refusing to permit the plaintiff to take the whole parcel.

In 1936, the Tweed brothers, predecessors in interest of the defendants, purchased the land in question, located along a railroad track in the city of La Mesa, and built a planing mill on the easterly half thereof, which was zoned for industrial use. The westerly half was zoned R-2 (two-family residence). Four years later, after obtaining a variance permit, additional structures were erected on the westerly half, so that the planing mill covered the entire property.

In 1945, the city of La Mesa adopted Ordinance Number 265, changing the zoning laws; placing the subject property in an R-1 category (one-family residence); granting permission to continue nonconforming uses existing at the time the ordinance took effect, such as the defendants' planing mill; providing that any nonconforming building should not be "enlarged, extended, reconstructed or structurally altered" excepting alterations or replacements within any 12-month period not exceeding 25 per cent of the building's assessed valuation; directing that if any nonconforming building should be damaged by "fire, explosion, Act of God or Act of the Public Enemy" to the extent of more than 75 per cent of the assessed value, the nonconforming use should terminate.

In 1954 the city council caused a study to be made respecting the adoption of a master zoning plan and, following the recommendations made as a result of this study, in April, 1955, adopted a zoning ordinance for the entire city, known as Ordinance Number 618, which, among other things, zoned the property in question as R-3 (multiple family residence); permitted the continuance of a nonconforming use and the

---

*Assigned by Chairman of Judicial Council.

changing of such use to another "of the same or more restricted classification"; provided an amortization plan for the termination of all such uses; prohibited any structural alterations to nonconforming buildings, except those provided by law, and excepting also those nonconforming buildings destroyed to the extent of not more than 50 per cent of their replacement value where such destruction was caused by "fire, explosion or other casualty or Act of God or the Public Enemy"; and expressly repealed Ordinance Number 265.

Under the amortization plan adopted by the later ordinance, a nonconforming use of wooden frame buildings, such as those on defendants' property, would terminate upon the expiration of 20 years from the date of construction of the nonconforming buildings, but, in no case, less than five years after notification by the city council.

As a further result of the master plan study it was decided to extend Nebo Drive one block between Allison Street and University Avenue, which would require the acquisition of the 40-foot strip of defendants' land.

Approximately a year prior to the adoption of Ordinance Number 618 the city acquired all of the property in the block where defendants' planing mill is located, except the defendants' property, and thereafter undertook negotiations to obtain the 40-foot right of way from them. Included in these negotiations was a proposal to reconstruct a part of defendants' planing mill on property which the city theretofore had acquired. Under this proposal it would have been necessary to zone the premises for an industrial use. However, the parties did not reach a specific understanding and, on February 23, 1955, the city terminated these negotiations; on April 26, 1955, enacted Ordinance Number 618; on June 30, 1955, filed this action; and on September 21, 1955, notified the defendants to terminate their nonconforming use within five years.

The 40-foot strip which the city seeks to acquire by this action would separate the defendants' planing mill from the railroad track and its siding privileges; would cause the removal of one building and a part of some of the other buildings on defendants' property; and would take 4,435 square feet from the 22,645 square feet of the whole parcel.

As applied to this case, Ordinance Number 618 authorized the city council to terminate the defendants' nonconforming use within five years. The buildings upon the property in

question were constructed in 1936; had an estimated total economic life of 40 years; and, at the time of the adoption of the ordinance, had an estimated remaining economic life of 21 years. The planning expert who recommended the 20-year termination period provided in the ordinance was guided by the attitude of the Internal Revenue Department, Federal Housing Authority, banks and other loaning agencies respecting the estimated amount of use of an improvement, measured in units of time, necessary to effect a return on the investment therein. Based on the opinion of one of the expert witnesses, the present value of the improvements is $43,000.

The property to the north, east and south of the block in which the defendants' mill is located is zoned for either commercial or industrial uses.

The planning consultants employed by the city believed that the block in which the defendants' property is situated eventually should be used as part of a civic center, but recommended that, for the time being, it should be zoned for professional business purposes, which would act as a buffer between the adjoining commercial and residential zones.

The trial court held that the amortization provisions of Ordinance Number 618 were unconstitutional. For this and other reasons, the jury were instructed to disregard the provisions of that ordinance in determining the value of the property under consideration.

Comprehensive zoning is a legitimate subject for legislative consideration under the police power, and zoning ordinances which are reasonable in object and not arbitrary in operation constitute a valid exercise of that power. (*Jones* v. *City of Los Angeles*, 211 Cal. 304 [295 P. 14]; *Beverly Oil Co.* v. *City of Los Angeles*, 40 Cal.2d 552, 557 [254 P.2d 865]; *Livingston Rock etc. Co.* v. *County of Los Angeles*, 43 Cal. 2d 121, 126 [272 P.2d 4].)

Such ordinances ordinarily except from their operation existing lawful uses in conflict therewith, generally referred to as nonconforming uses, because of the questionable constitutionality of legislation which would terminate such uses forthwith. (*Jones* v. *City of Los Angeles, supra,* 211 Cal. 304; *County of San Diego* v. *McClurken*, 37 Cal.2d 683, 686 [234 P.2d 972]; *Livingston Rock etc. Co.* v. *County of Los Angeles, supra,* 43 Cal.2d 121, 127.)

Zoning legislation looks to the future, and may effect the eventual liquidation of nonconforming uses (*Livingston Rock etc. Co.* v. *County of Los Angeles, supra,* 43 Cal.2d 121,

127; *County of San Diego* v. *McClurken, supra,* 37 Cal.2d 683, 687; *Jones* v. *City of Los Angeles, supra,* 211 Cal. 304, 309; *Ricciardi* v. *County of Los Angeles,* 115 Cal.App.2d 569, 576 [252 P.2d 773]), providing the method of operation is not unreasonable or arbitrary. To this end, provisions which preclude the extension or enlargement of such uses, forbid resumption of a use when terminated, or provide a reasonable time within which the use must cease have been sustained as a valid exercise of the police power. (*County of San Diego* v. *McClurken, supra,* 37 Cal.2d 683, 687; *Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552 [254 P.2d 865]; *City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442 [274 P.2d 34].) When the nonconforming use relates to the existence of a type of structure, provisions which look to the elimination thereof through obsolescence or destruction have been approved. (*Rehfeld* v. *San Francisco,* 218 Cal. 83, 84 [21 P.2d 419].) "There is a growing tendency to guard against the indefinite continuance of nonconforming uses by providing for their liquidation within a prescribed period." (*County of San Diego* v. *McClurken, supra,* 37 Cal.2d 683, 686.)

The question for decision by this court is whether the provisions of Ordinance Number 618, adopting an amortization schedule for the liquidation of nonconforming uses in nonconforming buildings, are reasonable and not arbitrary as applied to the defendants' property.

▋ Valid zoning legislation may provide for "the eventual liquidation of nonconforming uses within a prescribed period commensurate with the investment involved." (*Livingston Rock etc. Co.* v. *County of Los Angeles, supra,* 43 Cal.2d 121, 127.) ▋ The fact that the value of an individual's property may be depreciated as a result of legislation enacted under the police power is not cause for invalidation, if the purpose is proper and there "is no arbitrary and unreasonable application in the particular case." (*Livingston Rock etc. Co.* v. *County of Los Angeles, supra,* 43 Cal.2d 121, 127; *Beverly Oil Co.* v. *City of Los Angeles, supra,* 40 Cal.2d 552, 557; *City of Los Angeles* v. *Gage, supra,* 127 Cal.App.2d 442, 453.) However, the extent of the injury caused by such legislation must be considered in determining whether the loss sustained is merely an incident to a valid exercise of the police power or constitutes a taking of property without just compensation. (*Jones* v. *City of Los Angeles,*

*supra,* 211 Cal. 304, 319.) Each case must be determined on its own facts. (*Livingston Rock etc. Co.* v. *County of Los Angeles, supra,* 43 Cal.2d 121, 126.)

The plaintiff relies upon the decision in the case of *City of Los Angeles* v. *Gage, supra,* 127 Cal.App.2d 442, in support of its contention that the ordinance in question is a valid exercise of the police power. The defendants claim otherwise, upon the ground that the cited case involved only the application of a plan to liquidate nonconforming uses in a conforming building as distinguished from a plan to liquidate nonconforming uses in a nonconforming building. In that case, the defendant Gage operated a plumbing supply business in a residential building, in a "C" zone, under a zoning ordinance which expressly permitted such a use. By a subsequent ordinance, the building was placed in a multiple dwelling zone; a nonconforming use was granted; but such use was to be discontinued within five years. The constitutionality of this liquidating provision was sustained. The cited cases and the case at bar are clearly distinguishable. In the former, the individual's loss was limited to that involved in moving his business. He was given five years within which to accomplish this change. The building on his property was of a type approved for use in the zone where situated; it would not have to be moved or altered. In the case at bar, not only are the defendants required to move their business within five years, but also to terminate the use of their buildings, which are not capable of being converted into residences, and cannot be moved without a total loss. Moreover, in this case not only is the private loss greater than in the Gage case, but the public gain is less. (*City of Los Angeles* v. *Gage, supra,* 127 Cal.App.2d 442, 460.) It is contemplated that the block in which the defendants' property is located, the balance of which already has been acquired by the city, eventually will become part of a civic center. In the interim, it is proposed, under zoning ordinance Number 618, to restrict the use of this block to single family dwellings. However, shortly before the adoption of that ordinance negotiations were under way to transfer a part of the city's property to the defendants, in exchange for the right of way which is the subject of this action, and to zone the block in question for industrial uses.

In order to effect its change of plans, which would permit only a residential use of defendants' land during the interim period awaiting the creation of a civic center,

the city, by its ordinance, requires the defendants, *within five years,* to liquidate their investment which has an estimated remaining 21 years of economic life, although shortly before the adoption of that ordinance, the land in question was considered a proper subject for classification as an industrial site; was recommended by the planning consultants for inclusion within a professional zone; is bordered on the east by a railroad track; and surrounded on three sides by industrial and commercial businesses. This is unreasonable and arbitrary.

In ruling on defendants' objection to a consideration of Ordinance Number 618, the trial court found that the provisions thereof with respect to liquidating nonconforming uses, as applied to the defendants' property, was "unreasonable and discriminatory," "without regard to the value of the business or the resultant detriment," and "the time allowed therefor is . . . too short." These findings were proper.

However, the trial court instructed the jury to disregard entirely Ordinance Number 618, and gave further instructions based upon the provisions of Ordinance Number 265. The plaintiff contends that this constituted prejudicial error.

Ordinance Number 618 expressly repealed Ordinance Number 265. Unless the whole of the former is invalid the latter does not exist.

Only those provisions of Ordinance Number 618 concerning the liquidation of nonconforming uses, as applied to defendants' property, are invalid. This ordinance contains the usual saving clause which provides, that in the event any part thereof be declared invalid the remaining parts shall not be affected by such invalidity. ■ Where the validity of an ordinance is attacked upon the ground that a part thereof is unconstitutional, and a severability clause is included therein, the court may consider such a clause as a declaration of intention by the enacting body that "insofar as lay within its power a separable invalid portion of the act should not destroy the whole." (*Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536, 555 [171 P.2d 885]; *Bacon Service Corp.* v. *Huss,* 199 Cal. 21, 32 [248 P. 235].) Although part of an ordinance may be unconstitutional, such fact does not render the whole thereof void if the remaining provisions can be separated from the portions which are valid. "The unconstitutional provisions will not vitiate the whole act, unless they enter so entirely into the scope

and design of the law, that it would be impossible to maintain it without such obnoxious provisions." (*Danskin* v. *San Diego. Unified Sch. Dist., supra,* 28 Cal.2d 536, 555; *National Ice etc. Co.* v. *Pacific Fruit Express Co.,* 11 Cal.2d 283, 293 [79 P.2d 380].) ▇ The invalid part of a statute is not inseparable from the remainder, unless all of the parts are so interdependent that to eliminate the former would destroy the force of the whole statute. ▇ Conversely, the valid part of a statute will be sustained, even though other parts are invalid, if the former can accomplish one or all of the purposes thereof without the latter. (*People* v. *Lewis,* 13 Cal.2d 280, 284 [89 P.2d 388] ; *National Ice etc. Co.* v. *Pacific Fruit Express Co., supra,* 11 Cal.2d 283, 293; *Robinson* v. *Bidwell,* 22 Cal. 379, 386.)

Ordinance Number 618 can be upheld and enforced without the objectionable provision fixing a time limit for the termination of a nonconforming use. (*Danskin* v. *San Diego Unified Sch. Dist., supra,* 28 Cal.2d 536, 555.) It is a comprehensive zoning ordinance, the general scope and design of which will not be impossible to maintain without the part declared unconstitutional.

All of the parties to this action agree that the provisions of a valid zoning ordinance properly may be considered by the jury in determining the value of property taken and the resulting severance damage, if any. Whether the action of the trial court, in withdrawing the whole of Ordinance Number 618 from consideration by the jury and substituting pertinent provisions of Ordinance Number 265, was prejudicial, depends upon the application of the conflicting parts of these two ordinances to the facts of this case.

▇ Ordinance Number 618 classified defendants' property as R-3 (multiple dwelling), whereas Ordinance Number 265 placed it in zone R-1 (single dwelling). Over objection, evidence was introduced with respect to the severance damage sustained if the property would revert to an R-1 classification upon the taking. This was error, as under no circumstances would the property revert to such a classification, because the existing zoning law placed it in an R-3 zone upon termination of the existing use.

Ordinance Number 618 permitted a nonconforming use of a nonconforming building to be continued and to be "expanded or extended throughout such building" or "changed to another use of the same or a more restricted classification" if no structural alterations are required; whereas Ordinance

Number 265 permitted only the continuance of an existing nonconforming use. In conformity to the latter ordinance, the trial court instructed the jury that, with respect to property which had been improved for a certain use "by buildings that are of a character that they are susceptible to that particular use and that use has been carried on for which the building was constructed and planned, why that type of use must be recognized and as long as it is carried on lawfully and legitimately and as the property was so planned, it may be continued. But there is this about zoning laws, that the zoning law in nonconforming use is recognized as permissible so long as that use is carried on, that is, that use cannot be increased, *nor can it be changed to another use. . . . So if it be the fact that for some reason a planing mill could not be carried on on this particular piece of property under this zoning law it would cease to be industrial property and would be residential property only.*" (Italics ours.)

There was testimony by defendants' witnesses from which the jury could have concluded that the defendants' property would be economically unsuited for a planing mill after the severance, but could be used to advantage as a contractor's equipment and material yard or for a cabinet making business, and, under such circumstances, the severance damage would be $25,400. The jury was foreclosed from considering this evidence under the foregoing instruction.

█ It is argued that the verdict awarding $47,500 severance damages could have been based upon a set of facts to which the erroneous instruction was not applicable. On the other hand, it is just as likely that the jury relied upon a set of facts to which it applied this instruction. It is impossible to determine upon what theory the jury based its award. Under these circumstances the error was prejudicial. (*Akers* v. *Cowan*, 26 Cal.App.2d 694, 699 [80 P.2d 143].)

Ordinance Number 618 provides: "The nonconforming use of a nonconforming building may be continued and may be expanded or extended throughout such building provided no structural alterations except those required by law are made therein"; whereas, Ordinance Number 265 provided that no nonconforming building shall be structurally altered, except that work done in any 12-month period "on ordinary structural alterations or replacements of walls, fixtures or plumbing not exceeding twenty-five (25) per cent of the building's assessed valuation may be permitted." █ The

court instructed the jury as follows: ". . . It is provided in that ordinance that if at any time alterations are made in the existing buildings upon a property so located that exceed twenty-five per cent of the assessed value of the property in any 12 month period, that the nonconforming use shall thereby be terminated. In determining the value of the property you may consider that. . . ." This instruction is an incorrect statement of the law. It does not limit the restriction to "structural" alterations. More serious, it advised the jury that a nonconforming use terminated if alterations are made in the existing buildings which exceeded 25 per cent of the assessed valuation of the property, contrary to the provisions of Ordinance Number 618, which excepted alterations "required by law" and, of necessity, would exclude those required by the taking in question.

Evidence was introduced from which the jury could have concluded that the taking in question would require alterations in excess of 25 per cent of the assessed value of the buildings on defendants' property which, under the trial court's instruction, would result in a termination of the nonconforming use. If the jury so found, the prejudicial nature of the error in this instruction is apparent.

Ordinance Number 618 provides for the termination of a nonconforming use if any building subject to such a use is destroyed by "fire, explosion or other casualty or Act of God or the Public Enemy" to the extent of more than 50 per cent of its reasonable replacement value at the time of such destruction; whereas, Ordinance Number 265 provided for such a termination if the buildings were damaged by "fire, explosion, Act of God or Act of the Public Enemy" to the extent of 75 per cent of the assessed value thereof.

The trial court instructed the jury that "In determining the value of the property, that is the whole value before the taking . . . you will take into consideration the zoning laws as they would affect the overall value of the property . . . bearing in mind that if for any reason the property would be destroyed . . . to the extent of seventy-five per cent of its assessed value, then the nonconforming use would terminate."

There was testimony from which the jury could have concluded that 50 per cent of the replacement cost far exceeded 75 per cent of the assessed value of the improvements in question and, under Ordinance Number 618 the defendants' nonconforming use would be assured a longer life than under

Ordinance Number 265. Although such a factor might constitute an upgrading influence on the value of the whole property, to what degree, if any, that influence might be reflected in the value of the part taken or in the value of the part remaining was a question for the jury to determine.

The defendants claim that the plaintiff is estopped to take advantage of Ordinance Number 618 and, therefore, it was not admissible in evidence.

The record does not sustain a conclusion that this ordinance was adopted in order to take defendants' property without paying just compensation therefor. Over two years prior to the commencement of this action, and before there was any thought of obtaining the 40-foot strip in question, the city instituted a survey preliminary to the enactment of a comprehensive zoning ordinance and master plan. The provisions in the ordinance, with respect to the nonconforming uses, are a result solely of this survey; apply to all property within the city; and are directed toward effecting compliance with the master plan. Moreover, there is no showing of injury. With the exception of those provisions terminating the defendants' nonconforming use within five years, Ordinance Number 618 does not depreciate the value of their property. ■■■ The fact that an application of this ordinance, to the premises in question, might result in a smaller loss being sustained by the taking of the 40-foot strip, with a consequent reduction in the amount of severance damages to be awarded, did not authorize an application of the doctrine of equitable estoppel to prevent a consideration of that ordinance in determining the amount of such damages. Any reduction in the amount of damages awarded, resulting from an application of the present ordinance to the facts of this case, must be attributed to a finding that the property remaining after the taking is more valuable than it would have been under the prior ordinance. ■■■ In addition, even though it be assumed that the city should not be permitted to take advantage of Ordinance Number 618, this fact would not authorize the defendants to take advantage of Ordinance Number 265, which had been repealed.

The defendants also contend that the plaintiff waived any error in the instructions by a stipulation and by objection to certain testimony. These contentions, however, are not sustained by the record.

The plaintiff contends that the trial judge erred in re-

fusing to give instructions which it had offered, and also in his ruling on the admission and rejection of evidence.

The record does not disclose that either party proposed any instructions, and it will be presumed that none were offered.

Objection was made to the admission of testimony that it would cost $24,982 to relocate and construct a new electrical system, $3,965 to remove and relocate the blower system, and $900 to move defendants' machinery to another location. ▉ The cost of removing personal property is not a compensable item in a condemnation proceeding. (*Central Pac. R. R. Co. v. Pearson,* 35 Cal. 247, 263; *County of Los Angeles v. Signal Realty Co.,* 86 Cal.App. 704, 710 et seq. [261 P. 536].) ▉ If equipment is affixed to land which is condemned, compensation for its loss should be included in the value of the property taken. (*City of Los Angeles v. Klinker,* 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148].) The cost of removing or relocating such equipment is not reasonably related to its value as a part of the premises involved. Such a cost is not a compensable item recoverable as a part of the award for land taken or on account of severance damage. (*People ex rel. Dept. of Public Works v. Auman,* 100 Cal.App.2d 262, 264 [233 P.2d 260].)

▉ Section 1248 of the Code of Civil Procedure provides in part as follows:

"The court, jury or referee . . . must ascertain and assess: . . . 6. If the removal, alteration or relocation of structures or improvements is sought, the cost of such removal, alteration or relocation and the damages, if any, which will accrue by reason thereof."

The evidence to which objection is made involves the cost of removal of equipment and machinery from the whole of defendants' property. It is not limited to the cost of altering or removing that part of the structures and improvements required by the taking of the 40 feet strip. Nevertheless, the defendants contend that, under the provisions of said section 1248, they are entitled to compensation for the removal of machinery and equipment from the whole of their property as damages accruing by reason of alterations caused by the taking. However, if, as defendants contend, the taking of a part of their property destroys its use as a planing mill, because of the zoning laws or inadequacy of the remaining space, and requires the removal of their business to another location, the cause of such removal is the taking of a part of the property and not the alteration of the buildings upon the

remainder. The costs of such removal are not "damages . . . which will accrue by reason" of the alteration within the meaning of the code section. The evidence objected to was not admissible.

■ The plaintiff also objected to the admission of evidence respecting alleged bad faith and fraud on its part concerning negotiations about the acquisition of the 40-foot strip before the commencement of any action in the condemnation; proving ownership by the city of land adjoining that of defendants; and relating offers to sell an industrial site to the defendants for 10 cents a square foot. Although this evidence was not pertinent to the issue of damages, it was relevant to the issues raised by the defendants' amended answer alleging fraud, bad faith and abuse of discretion on the part of plaintiff in the adoption of its resolution of necessity; also to a consideration of the unconstitutionality of zoning ordinance Number 618. (*People ex rel. Dept. of Public Works* v. *Schultz Co.*, 123 Cal.App.2d 925, 941 [268 P.2d 117].) Admission of this testimony was proper.

It is argued that the negotiations to acquire the 40-foot strip, before commencement of these proceedings, constituted an offer to compromise the controversy in question and, for this reason, evidence with respect thereto is inadmissible. (Code Civ. Proc., § 2078.) ■ Evidence of facts tending to show fraud and bad faith on the part of the city were admissible in this action as proof of the allegations contained in the defendants' amended answer, even though the events related occurred during negotiations to effect a compromise seeking acquisition of the 40-foot strip in question. The honesty and good faith of the city was not an issue in controversy at the time of these negotiations, and it made no admissions with respect thereto in order to effect a compromise.

■ The fact that statements are made or incidents take place during negotiations to effect a compromise, does not justify exclusion of evidence relating to the same if such evidence otherwise is admissible. (*California Home Extension Assn.* v. *Hilborn*, 37 Cal.2d 459, 465 [235 P.2d 369]; *Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716, 729 [232 P.2d 572].) ■ It would not be competent to admit an offer of compromise as such; however, "the declaration therein of facts involved in the controversy which are not mere concessions made for the purpose of such offer, but are statements of independent facts, are admissible against the party

making them." (*Rose* v. *Rose,* 112 Cal. 341, 344 [44 P. 658].) Plaintiff's objection properly was overruled.

The plaintiff also contends that the trial court committed error in refusing to admit testimony respecting the appraised value of defendants' property, as determined in a prior probate proceeding. On direct examination such evidence is inadmissible. (*City of Los Angeles* v. *Deacon,* 119 Cal.App. 491, 493 [7 P.2d 378].) On cross-examination, a witness who has testified as an expert on values may be asked concerning his knowledge of a prior probate appraisal, for the purpose of testing the value of his opinion. (*Central Pac. R. Co.* v. *Feldman,* 152 Cal. 303, 310 [92 P. 849].) However, the scope of such cross-examination is within the discretion of the trial judge (*People* v. *McReynolds,* 31 Cal. App.2d 219, 225 [87 P.2d 734]), who may determine that, under the circumstances of the particular case, the time when the appraisal was made is so remote that any lack of knowledge concerning it is irrelevant. The ruling objected to was not error.

Finally, the plaintiff contends that it should have been permitted to purchase the whole parcel of defendants' property.

After the jury rendered its verdict, the city council, pursuant to the authority which it assumed was conferred by section 1266 of the Code of Civil Procedure, adopted a resolution declaring it was necessary for the public use that the city acquire the whole of defendants' property. The code section in question provides:

"Whenever land is to be condemned by a . . . city . . . for any street . . . and the taking of a part or parcel . . . would leave the remainder . . . in such . . . condition as to require such condemnor to pay . . . an amount equal to the fair and reasonable value of the whole . . . the resolution . . . may provide for the taking of the whole . . . and upon the adoption of such resolution, it shall be deemed necessary for the public use . . . that such condemning authority acquire the whole of such parcel."

Following the adoption of the resolution referred to, the plaintiff asked and was granted permission to file an amended complaint seeking acquisition of the whole property for $70,000; the value established by the verdict. The court found that the portion of the property not taken had a "substantial value over and above the amount of severance damages" and denied plaintiff's request to acquire the whole.

Plaintiff argues that it should be permitted to take the whole parcel under the provisions of said section 1266 because, under the verdict, the city would be required to pay $58,000 for the 40-foot strip, whereas the value of the whole parcel was $70,000. The code section under consideration permits the taking of the whole property only where the taking of a part would require the condemning authority to pay an amount ''equal'' to the value of the whole. It is obvious that $58,000 is not equal to $70,000. The city contends that the requirements of the law are satisfied if these sums are ''substantially equal.'' Even if this interpretation is accepted, it would be unreasonable to hold that a 17 per cent difference in the two amounts brought them so close together as to constitute substantial equality. Furthermore, the plaintiff contends on this appeal that, under erroneous instructions, the jury awarded defendants severance damages in excess of their actual loss. If this is true, the variance between the amounts which must be equal, in order to permit a taking of the whole property, is even greater than now appears.

The court's refusal to permit plaintiff to acquire the whole parcel was proper. However, because of prejudicial errors in the giving of instructions and the admission of evidence, the judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied January 8, 1957, and respondents' petition for a hearing by the Supreme Court was denied February 6, 1957. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.